## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SERVICE EMPLOYEES INTERNATIONAL UNION HEALTH AND WELFARE FUND 11 Dupont Circle, N.W., Suite 900 Washington, DC 20036-1202** | ) ) ) ) ) | |
| **and** | ) ) | |
| **ANNA BURGER, MICHAEL KERR, VALERIE LONG, ERICK IRELAND, DAVID MONROE, LISA HETRICK AND MICHAEL RITZ, TRUSTEES OF THE SERVICE EMPLOYEES INTERNATIONAL UNION HEALTH AND WELFARE FUND 11 Dupont Circle, N.W., Suite 900 Washington, DC 20036-1202** | ) ) ) ) ) ) ) ) | **Civil Action No.:** |
| **Plaintiffs,** | ) ) ) ) ) | |
| **v.** | ) ) | |
| **COALFIELD COMMUNITY ACTION PARTNERSHIP, INC., d/b/a MINGO COMMUNITY ACTION PARTNERSHIP, INC. 815 Alderson Street Williamson, WV 25661** | ) ) ) ) ) ) ) ) | |
| **Serve: M. Timothy Crum 815 Alderson Street Williamson, WV 25661** | ) ) ) ) ) ) ) | |
| **Defendant.** | ) ) ) | |

## COMPLAINT UNDER ERISA FOR DELINQUENT AND OUTSTANDING EMPLOYER CONTRIBUTIONS, INTEREST, AND LIQUIDATED DAMAGES

### Introduction, Jurisdiction and Venue

1.      This is a civil action brought by an employee benefit plan, and by the Trustees of an employee benefit plan, pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2) and 1145 and Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a) to collect unpaid collectively bargained contributions, interest, and liquidated damages owed by Defendant.

2.      Jurisdiction is conferred upon this Court by Section 502(e) and (f) of ERISA, 29 U.S.C. § 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3.      Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as the Service Employees International Union Health and Welfare Fund is administered in this District.

### Parties

4.      Plaintiff Service Employees International Union Health and Welfare Fund (the "SEIU Health & Welfare Fund"), is an employee welfare benefit plan within the meaning of Section 3 (1), (2), (3) of ERISA, 29 U.S.C. § 1002 (1), (2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing health care and other welfare benefits to eligible employees, their families and dependents. The SEIU Health & Welfare Fund is and at all times

material herein has been, a jointly administered trust fund established pursuant to Section

302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The SEIU Health & Welfare Fund is

administered at 11 Dupont Circle, N.W., Suite 900, Washington, D.C. 20036.

  5.  Plaintiff Trustees of the SEIU Health & Welfare Fund, Anna Burger, Michael

Kerr, Valarie Long, Erick Ireland, Dave Monroe, Lisa Hetrick and Michael Ritz, are the duly

authorized Trustees of the SEIU Health & Welfare Fund whose duty it is to administer the SEIU

Health & Welfare Fund for the benefit of the participants and beneficiaries of the SEIU Health &

Welfare Fund.  Plaintiff Trustees are fiduciaries within the meaning of 3(21)(A) of ERISA, 29

U.S.C. § 1002(21)(A), and are authorized and empowered to maintain this action.

  6.  Defendant Coalfield Community Action Partnership, Inc. formerly operated under

the name of Mingo Community Action Partnership, Inc. ("Mingo" or "Defendant"), is and at all

times herein was an "employer in an industry affecting commerce" as defined in Section 3(5),

(9), (11), (12) and (14) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), (12) and (14), and Sections

2(2), (6), and (7) of the LMRA, 29 U.S.C. §§ 152(2), (6), and (7).

  7.  Upon information and belief, Defendant is currently a corporation operating under

the laws of the State of West Virginia, incorporated in the State of West Virgina and with offices

located at 815 Alderson Street, Williamson, West Virginia, 25661.

## Factual Background

  8.  At all relevant times, Service Employees International Union, Local 1199 (the

"Union") has been the exclusive collective bargaining agent for Defendant's employees working

for Mingo.  Local 1199 is the main Health Care and Social Service SEIU local in the states of

West Virginia, Kentucky, and Ohio, and is also referred to as "1199 WOK" or "1199

WV/KY/OH."

9.    At all relevant times, Defendant was a signatory to a collective bargaining

agreement ("Collective Bargaining Agreement") with the Union effective for the period of May

1, 2004 through April 30, 2007.   A true, correct and complete copy of the Collective Bargaining

Agreement is attached as Exhibit 1.

10.    Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, employers who are

obligated to make contributions to a multi-employer employee benefit plan must do so in

accordance with the terms of the applicable collective bargaining agreement.

11.    In accordance with the Collective Bargaining Agreement, Defendant must

contribute to the SEIU Health & Welfare Fund a specified amount each month for each eligible

employee.  See  Exhibit 1, Article 29.   In accordance with the Collective Bargaining Agreement,

Defendant has submitted SEIU Health & Welfare Fund Remittance Reports to the Fund.

12.    The SEIU Health & Welfare Fund exists pursuant to the terms of the Restated

Agreement and Declaration of Trust ("Trust Agreement").  A true and correct copy of the

Agreement and Declaration of Trust is attached hereto as Exhibit 2.

13.    At all relevant times, Article IX of the SEIU Health & Welfare Fund's Trust

Agreement provides that an employer must submit complete remittance reports to the SEIU

Health & Welfare Fund with the employer's contributions.  The remittance report contains the

names of each covered employee and the number of compensable hours for each employee

4

during the reporting month.  The remittance information is necessary in order for the SEIU

Health & Welfare Fund to properly credit each employee with the appropriate amount of Health

& Welfare credit and to verify that the employer remitted the correct amount of contributions for

the reported hours.

14.    In order to implement and execute the terms and conditions of the Trust

Agreement and the SEIU Health & Welfare Fund, the Trustees published and adopted a Policy

for Collection of Delinquent Contributions ("Collection Policy") establishing the steps and

responsibilities of the Trustees, the Plan administrators, the Fund's attorneys and auditors in the

collections process.  A true and correct copy of the Collection Policy is attached hereto as

Exhibit 3.

15.    At all relevant times, the Collection Policy provided that an employer delinquent

in its contribution obligations to the SEIU Health & Welfare Fund is liable for interest at the rate

of 10% per annum.

16.    At all relevant times, the Collection Policy provided that the Fund assessed

liquidated damages at the rate of five percent (5%) of the amount of contributions which are

owed.  See Exhibit 3, Section 2, p. 2.  Upon the commencement of litigation, liquidated damages

will increase to twenty percent (20%) of the amount of the contributions which are owed or the

total interest owed, whichever is greater. See Exhibit 3, Section 4, p. 8-9.

17.    Furthermore, Article IX, Section 4 of the Trust Agreement empowers the Trustees

to audit the payroll records and books of any participating employer.  The employer is required to

make its payroll records and books available to the SEIU Health & Welfare Fund.

18.     On or about November 18, 2005, the SEIU Health & Welfare Fund performed a payroll audit of Defendant.  The payroll audit included, but was not limited to, analysis of pertinent provisions of the collective bargaining agreement and comparison of underlying payroll records of Defendant to contribution reports received by the Trust Fund.

19.     The payroll audit revealed that Defendant had failed to submit reports and full payments as owed under the SEIU Health & Welfare Fund for the work periods January 1, 2003 to December 31, 2004.

20.     The audit revealed that Defendant had the following shortages as a result of non-reporting or under-reporting of contributions: $17,071.97 in contributions, $3,649.73 in interest through November 30, 2005, $853.60 in liquidated damages, $419.60 in testing fees, and an overpayment of $401.03.  Therefore, as a result of the payroll audit, Defendant owed a total of $21,593.87 to the SEIU Health and Welfare Fund.

21.     Daily interest continued to accrue on the owed amounts at a rate of $4.68 per day from November 30, 2005 to the date of payment.  As of July 31, 2008, Defendant owed a total of $8,208.05 in interest.  Daily interest will continue to accrue until the date of payment.

21.     The SEIU Health & Welfare Fund has assessed liquidated damages at 5% for a total of $853.60.  In accordance with Section 5 of the Collection Policy, this amount will increase to 20% of the unpaid contributions or the amount of interest owed, whichever is greater, upon commencement of litigation.

22.     In response to Defendant's missing payments and under payments, the SEIU Health & Welfare Fund sent multiple notices to Defendant detailing these amounts owed.  The

6

Fund sent notices on November 18, 2005, January 12, 2007, and February 12, 2007 demanding payment. True, correct and complete copies of these notices are attached collectively as Exhibit 4.

23.     In response to Defendant's missing payments and under payments, counsel for the SEIU Health & Welfare Fund sent notices to Defendant on or about February 5, 2008 and May 5, 2008 demanding payment. True, correct and complete copies of these notices are attached collectively as Exhibit 5.

24.      Defendant's failure to timely remit contributions pursuant to the results of the audit makes Defendant liable for liquidated damages and interest on all late payment amounts and on all unpaid amounts pursuant to the applicable Trust Agreements and Section 502(g) of ERISA.

25.     Despite the collection efforts of the Fund Office and counsel, Defendant remains delinquent, and there is little prospect that, lacking judicial compulsion, Defendant will satisfy its remaining obligations to the Plaintiff, and pay the delinquent and unpaid contributions, liquidated damages and interest due on the delinquent, underpaid and unpaid contributions.

26.     Defendant's actions are in violation of the collective bargaining agreement, and the SEIU Health & Welfare Fund governing documents.

27.     The Trust Agreement provides that in any action, the delinquent employer shall be liable for reasonable attorneys' fees (with minimum of $100.00) and all reasonable costs incurred in the collection process, including court fees, audit fees, etc. Article IX, Section 6 of the Trust Agreement.

7

28.     Pursuant to Section 502(g) of ERISA, if judgment is entered against Defendant, the SEIU Health & Welfare Fund is entitled to an award of unpaid contributions, interest on the unpaid contributions, an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the Trusts or in the amount not in excess of twenty (20) percent or an amount determined by the court, reasonable attorney's fees and costs, and other legal or equitable relief as deemed appropriate by the court.

## COUNT I

29.     Plaintiffs reallege and incorporate Paragraphs 1 through 28.

30.     This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145.

31.     Defendant is delinquent to the Plaintiff for owed contributions and remittance reports for the periods specified.  Defendant owes a total of $17,071.97 in underpaid contributions as determined by the audit report.  After applying an overpayment uncovered by the audit report, Defendant owes a total of $16,670.94 in underpaid contributions to the Fund.

32.     As a result of the underpayments Defendant owes $8,208.05 in interest as of July 31, 2008, as well $419.60 for the testing fee cost of the audit.

33.     As a result of the underpayments, the SEIU Health & Welfare Fund has assessed liquidated damages at the rate of 5% against Defendant for a total of $853.60 in liquidated damages.  Under the terms of the Trust Agreement and Collection Policy, this amount increases to 20% of the unpaid contributions due or the amount of interest owed, whichever is greater, at the commencement of litigation.

34.     The failure of Defendant to submit all amounts owed due threatens the SEIU

Health & Welfare Fund's ability to provide benefits to the covered employees.  Defendant's

failure to pay all contributions due has caused great harm to the SEIU Health & Welfare Fund,

including, but not limited to, the following: they have caused the Fund to incur collection and

other expenses associated with pursuing this delinquency and unpaid contributions; they have

caused a loss of the time value of the delinquent and unpaid contributions to the Funds; and they

have resulted in a discrediting of the Trustees' ability to enforce obligations owed to it, which

may result in other employers utilizing the same tactics.

35.     Prior to commencing this lawsuit, the SEIU Health & Welfare Fund has sent

several letters and attempted to directly contact Defendant in an attempt to obtain the outstanding

contributions from Defendant.  Defendant has not responded to these letters.  There is little

prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the SEIU

Health & Welfare Fund, and pay the delinquent and unpaid contributions, liquidated damages

and interest due on the delinquent and unpaid contributions.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.     Declare that Defendant is delinquent in remitting its remittance reports and

contributions to the SEIU Health & Welfare Fund pursuant to the Collective Bargaining

Agreement;

2.     Award Plaintiffs a judgment for Defendant's delinquent contributions in the

amount of $16,670.94 for the periods specified;

3.     Award Plaintiffs a judgment for Defendant's interest in the amount of $8,208.05,

9

plus all daily interest accumulated on the delinquent contributions not included in this total, up to the time of full payment;

4.      Award Plaintiffs a judgment for liquidated damages in the amount of $3,334.19 (20% of the unpaid contributions) or the total amount of interest owed, to be determined at the time of payment;

5.      Enter judgment for Plaintiff's attorneys' fees and costs including $419.60 for the cost of the audit testing fees, as required by the Collective Bargaining Agreement, the Trust Agreement and Section 502(g) of ERISA;

6.      Retain jurisdiction of this case pending compliance with its Orders; and

7.      Grant such further relief as the Court may deem appropriate.


                                  Respectfully Submitted,


                                  _____/s/_____
                                  Richard C. Welch (DC Bar# 485756)
                                  Eugene K. Ahn
                                  Mooney, Green, Baker & Saindon, P.C.
                                  1920 L Street, NW
                                  Washington, D.C.  20036
                                  (202) 783-0010
                                  (202) 783-6088 Facsimile
                                  rwelch@mooneygreen.com
                                  eahn@mooneygreen.com
                                  Counsel for the Plaintiffs

Dated: August 12, 2008

# EXHIBIT 1

# AGREEMENT

## BETWEEN

### Mingo Community Action Partnership, Inc.

## And

### SEIU District 1199 WV/KY/OH
### The Health Care and
### Social Service Union AFL-CIO

MAY 2 4 2004

## Effective:

### May1, 2004 through , April 30, 2007

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Cover | |
| Table of Contents | 1 |
| Agreement | 2 |
| Recognition | 2 |
| Union Security-Dues Checkoff | 3 |
| Scope of Agreement | 4 |
| Effects of Legislation | 4 |
| Management Rights | 4 |
| Non-Discrimination | 5 |
| Representation | 6 |
| Bargaining Unit Work | 6 |
| Probationary Period | 6 |
| Employee Classification | 7 |
| Hours of Work/Overtime Pay/Pay Period | 7 |
| Call Out | 8 |
| Union Orientation | 8 |
| Bulletin Board | 8 |
| Identification of Supervisor | 9 |
| Labor Management | 9 |
| Client Approval | 9 |
| Seniority/layoff/Recall | 10 |
| Job Bidding | 10 |
| Paid Time Off (PTO) | 11 |
| Holidays | 12 |
| Bereavement Leave | 12 |
| Medical Leave of Absence | 12 |
| Military Service | 12 |
| Union Leave | 13 |
| Health & Safety | 13 |
| Wages | 13 |
| Health and Welfare | 14 |
| Retirement | 16 |
| Discipline and Discharge | 16 |
| Grievance Procedure | 16 |
| Arbitration | 18 |
| Strikes and Lockouts | 19 |
| Successors | 20 |
| Jury Duty | 20 |
| Miscellaneous | 21 |
| Duration | 21 |
| Duration | 16 & 17 |

## ARTICLE 1
## AGREEMENT

This Agreement, entered into this 1st day of May, 2004 except where otherwise noted, by and Between Mingo Community Action Partnership Inc. (hereinafter referred to as "Employer") and District 1199, The Health Care and Social Service Union, SEIU, WV/KY/OH (hereinafter referred to as the "Union") acting herein on behalf of the employees of the said Employer in the bargaining unit as herein after defined now employed and hereinafter to be employed and collectively designated as "Employees".

WHEREAS, the Employer recognizes the Union as the Collective Bargaining representative for the Employees in the bargaining unit covered by this Agreement as hereinafter defined and

WHEREAS, it is the intent and purpose of the parties to this Agreement to promote and improve the mutual interest of the clients of the Employer as well as of its employees and to avoid interruptions and interferences with services to clients, to provide orderly collective bargaining relations between the Employer and the Union and to set forth herein a basic Agreement covering wages, hours, and conditions of Employment for the employees in the bargaining unit covered by this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

## ARTICLE 2
## RECOGNITION

**Section 1.**    The Employer recognizes the Union as the exclusive collective bargaining representative of all the employees in the bargaining unit described as follows:

> All full-time and regular part-time personal care providers employed by the Employer through its Mingo County, West Virginia facilities, but excluding all office clerical employees, and all professional employees, guards and supervisors as defined in the Act as certified by NLRB Case No. 9-RC-17464 on November 16, 2000.

**Section 2.**    Nothing in this agreement shall limit the right of the Employer to promote employees from the bargaining unit.

**Section 3.**    It shall not be the policy of the Employer to establish jobs or job titles that exclude employees from the bargaining unit.

2

## ARTICLE 3
## UNION SECURITY - DUES CHECKOFF

**Section 1.**     It shall be a condition of employment that all employees covered by this Agreement and hired, rehired, or transferred within the bargaining unit on or after its effective date shall, following the 90th day of employment, become and remain members of the Union in good standing, and employee shall be considered a member of the Union in good standing if the Employee tenders periodic dues and initiation fees equal to that uniformly required as a condition of membership.

**Section 2.**     Upon notification to the Employer, that an employee in the unit has failed to become or remain a member in the Union, in good standing such employee shall be discharged upon written demand for such discharge by the Union.

**Section 3.**     Upon receipt of duly executed authorization cards the Employer agrees to deduct from the pay of all employees who are members of the Union the established monthly dues, initiation fees, and/or other Union contributions and to remit such deductions to the Union by the fifth working day of the following month for which the deduction was made. The Employer will furnish to the Union names, addresses and (phone numbers if available.) Social Security Number, wage rate, job classification, hours worked during the pay period and dates of hire for all current and new employees in the bargaining unit each month.

The Employer will send to the Union each month a list of new hires, terminations, and employees on leave of absence. The Employer shall make deductions on a bi-weekly period each month. No employee shall be responsible for initiation fees until she/he has completed her/his 90th day of employment.

**Section 4.**     The Employer shall deduct political action fund contributions from the paychecks of those employees who submit a proper voluntary payroll deduction authorization form. The Employer shall submit to the Union monthly, the total check-off amount along with a list showing the names and amounts deducted from each employee. This shall be submitted as a separate check to the Union monthly along with the dues check.

**Section 5.**     It is specifically agreed that the Employer assumes no obligation, financial, or otherwise, arising out of the provisions of this Article, and the Union hereby agrees that it will indemnify and hold the employer harmless from any actions, claims, or proceedings, including attorney fees, by any employee arising from deductions made by the Employer hereunder. Once the funds are remitted to the Union, their disposition thereafter shall be the sole and exclusive obligation and responsibility of the Union.

3

## ARTICLE 4
## SCOPE OF AGREEMENT

**Section 1.**    The parties acknowledge that during the negotiations, which resulted in this Agreement, each had the unrestricted right and opportunity to present demands and proposals with respect to any matter subject to collective bargaining. Therefore, the Employer and the Union freely agree that during the term of this Agreement, neither party shall be obligated to bargain with respect to any matter or subject not covered or referred to in this Agreement and that there are no other agreements between the parties, either expressed or implied.

**Section 2.**    It is agreed that this written contract reflects the entire agreement between the parties and neither party shall have any obligation to the other or to the employees except as provided for in this Agreement. Amendments or clarifications of this Agreement mutually agreed upon, shall be reduced to writing, attached to and shall become a part of this Agreement.

## ARTICLE 5
## EFFECTS OF LEGISLATION

**Section 1.**    If any provision of this Agreement is in contravention of the Laws or regulations of the United States or the State of West Virginia, such provision shall be superseded by the appropriate provisions of such law or regulations for as long as the same is in force and effect; but all other provisions of this Agreement shall continue in full force and effect.

## ARTICLE 6
## MANAGEMENT RIGHTS

**Section 1.**    The management of the Employer, the control of the premises, the operation of the Employer, and the direction of the work force are vested exclusively with the Employer. The Employer retains, solely and exclusively, all its inherent rights to manage the Employer as such rights existed prior to the execution of the Agreement and all functions it possessed prior to entering into the Agreement with the Union, except such rights as are specifically abridged by this Agreement.

**Section 2.**    Except as expressly and specifically limited and restricted by a provision, of this Agreement, it is understood that the rights, which are the exclusive jurisdiction of the Employer, include but are not limited to the following: the right to operate the Employer and manage it's business in all respects in accordance with it's commitments and responsibilities; the determination of services to be provided, the location of facilities, including the establishment of new facilities and the relocation or closing of facilities or any section thereof; to introduce new or improved equipment, methods or facilities, the determination of type, components and volume of

4

work and/or services to be provided, work to be performed, schedules of hours of work, scheduling of overtime, to require overtime and to determine the number of overtime hours to be worked, to determine methods, means, and processes of operation, size of work force, to determine the number of employees it shall employ at any time, allocation and assignment or reassignment of work duties to employees, including shift time the number and length of shifts; to make necessary changes in the work schedule of an employee when required by Employer operating needs, to reorganize, discontinue, or enlarge any department, section or unit; control of all material, supplies, and equipment; the right to subcontract work; the right to establish and enforce operational standards and to direct the working forces, including the right to hire, transfer, promote, demote, lay off, and to discipline, suspend or discharge employees; to make changes in job classifications and job content to insure maximum efficiency of operations, to determine the policies regarding the selection and ability of employees and to establish, modify, or abolish jobs, job descriptions, job classifications, and work standards; to establish, change, revise, and enforce safety and work rules, and procedures governing the work force and to select and assign such duties as the employer deems appropriate, to bargaining unit employees and to supervisory and other categories of employees excluded from this Agreement including temporary employees who may be required to perform bargaining unit work.

**Section 3.**    The failure of the Employer to exercise any right, power, authority, or function in a particular way, shall not be deemed a waiver of its right to exercise such right, power, authority, or function or preclude the Employer from exercising the same right, power, authority, or function in some other way not in conflict with the express provisions of this Agreement.

# ARTICLE 7
## NON-DISCRIMINATION

**Section 1.**    Whenever used in this agreement masculine personal pronouns and feminine personal pronouns shall have equal application to the other unless the context otherwise indicates.

**Section 2.**    It shall be the policy of the Employer to provide equal employment opportunity to all individuals without regard to race, color, religion, sex, age, national origin, handicap, veteran disability, sexual orientation, union position or activity or non-activity and veterans.

**Section 3.**    This policy applies to recruitment, hiring, training, promotion, transfer, compensation, benefits and all other aspects of employment.

5

## ARTICLE 8
## REPRESENTATION

**Section 1.**     The Union will provide the employer with written notice of the names of all Union officers, Union representatives and Union delegates. Under terms of this Agreement, when any notification to the Union is required, the Employer will be entitled to rely on the accuracy of any current list of officers, representatives, and the named delegates until receipt of a revised list. Notification to any officer, representative or delegate shall be deemed to satisfy any notification requirements in this agreement.

**Section 2.**     In the event any non-employee or off-duty employee Union officer, or representative desires to enter the Employer's facility in their capacity of union representative, such officer or representative shall provide the Executive Director or designee reasonable advance notice prior to the visit. Such visits shall be kept to a minimum and scheduled so as to avoid interference with work and shall be limited to purposes of determining whether provisions of this Agreement are being observed to confer with bargaining unit members about such matters and for attending meetings called for under the provisions of the Grievance Procedures set forth in Article 32. Representatives who are not employees shall be subject to all the Employer's regulations applicable to non-employees. Such visits shall not interfere with the work of any employee or the operation of the Employer or any department thereof.

## ARTICLE 9
## BARGAINING UNIT WORK

**Section 1.**     Supervisory employees and other non-bargaining unit members may perform work performed by the bargaining unit personnel in cases of emergencies, where required to do so for instructional purposes, or where required to do so by absenteeism, or by the non-availability of qualified bargaining unit employees.

## ARTICLE 10
## PROBATIONARY PERIOD

**Section 1.**     Newly hired employees shall serve a probationary period. No benefits shall accrue during the probationary period and there shall be no responsibility for re-employment for any employee laid off or discharged for any reason during the probationary period. The probationary period is six (6) months. Benefits, if applicable, will not begin to accumulate until after the probationary period.

**Section 2.**     The Union will represent probationary employees for the purpose of collective bargaining with respect to wages, hours, and other conditions of employment; however, a probationary employee disciplined or discharged for any reason other than for Union activity

6

shall not be represented by the Union nor have recourse to the Grievance Procedure set forth in this Agreement.

## ARTICLE 11
### EMPLOYEE CLASSIFICATION

**Section 1.**    An employee who works 1560 hours (30 hours per week) in a calendar year shall be classified as a full-time employee.

**Section 2.**    An employee who works less than 1560 hours in a calendar year shall be classified as a part-time employee.

**Section 3.**    The Employer shall not purposefully schedule employee to deny them the classification of full-time.

**Section 4.**    The Employer shall provide all required training to perform or maintain the employees position with the Employer.

## ARTICLE 12
### HOURS OF WORK/OVERTIME PAY/PAY PERIOD

**Section 1.**    The normal pay period shall extend for two (2) calendar weeks commencing at 12:01 a.m., Saturday and ending at 12:00 p.m., on the second Friday thereafter. The normal hours of work are between 8:00 a.m. and 4:00 p.m. Monday thru Friday.

**Section 2.**    Overtime must have prior approval from the employee's supervisor, and be in writing on an overtime form.  All bargaining unit employees should complete his or her time sheet indicating only hours worked.

   (a)    Overtime hours are any hours which an employee spends engaged in work activities in excess of forty (40) hours in a workweek.
   (b)    One and one half regular straight time pay will be paid for all hours of work that exceed forty (40) hours a week.
   (c)    An employee's hours may be adjusted based on a client(s) billable hours status, but may not be adjusted for the purpose of avoiding overtime.

**Section 3.**    Employees who are called in to work on a day they are not scheduled to work shall be guaranteed two (2) hours worked for pay at their regular rate.  Employees not able to work shall call their supervisor at least one hour before the start of the shift.

7

**Section 4.**    Attendance by employees at in-services or other meetings that they are required to attend shall be considered hours worked for pay and overtime. When an employee is required on a day off to attend an in-service or staff meeting the employee will be paid a minimum of two (2) hours pay at their regular rate.

**Section 5.**    The Employer will continue its current practice of posting work schedules.

### ARTICLE 13
### CALL OUT

**Section 1.**    Employees who desire additional hours of work must state their interest by utilizing the following procedure: When additional hours are needed the Employer shall provide a list for employees to volunteer for additional hours. Hours will be offered to the most senior person based on the geographical location of this list and rotated down the list. Part-time employees have preference over full-time employees. The Employer is not obligated to offer hours if it results in overtime pay. If overtime is offered it will be offered to the most senior employee on the list by area. Designation of areas subject to agreement by both parties.

### ARTICLE 14
### UNION ORIENTATION

**Section 1.**    The Employer shall provide up to thirty (30) minutes without pay to a Union representative from the bargaining unit, or the Union Organizer, for Union orientation of all employees successfully completing their probationary period. The Employer shall direct and make mandatory that all new employees who have completed their probationary period to meet with a Union representative on the payday following completion of the probationary period. A pre-designated area within an employer's office shall be designated for the purposes of Union Orientation.

### ARTICLE 15
### BULLETIN BOARD

**Section 1.**    The Employer shall provide bulletin board space on the building in the outside picnic area or in the Employer's lobby at its main office for union notices. The bulletin board shall not be used to defame the Employer or any person. The union shall share the cost of the bulletin board.

## ARTICLE 16
## IDENTIFICATION OF SUPERVISOR

**Section 1.**    Employees shall be told the identity of their immediate supervisor and shall be responsible to the supervisor, the Director of Programs, and the Executive Director. Employees shall be provided the supervisor's telephone number. In the absence of any of the above the Director of Finance and Administration shall serve in an acting capacity.

## ARTICLE 17
## LABOR MANAGEMENT

**Section 1.**    The Labor Management Committee shall consist of three management representatives chosen by the employer and three employees and union representative from the bargaining unit chosen by the union. This committee does not replace the grievance procedure or negotiations of the collective bargaining agreement. Each party may add one (1) member as the bargaining unit increase by ten above 30.

**Section 2.**    The parties shall meet quarterly provided either party submits an agenda seven days prior to the meeting. If there is no agenda the meeting will be canceled. Meetings will be off work time.

## ARTICLE 18
## CLIENT APPROVAL

**Section 1.**    In the event an in-home care provider is rejected by a client or displaced and loses his/her position, the employee may apply for any available position within the designated geographic area, within the bargaining unit. Such employee shall have no right to bump any other employee. In the event that there are no openings in the bargaining unit at the time of the employee's loss of position, the employee's name will be placed on a preferential recall list and considered for any available opening within the bargaining unit, for a period of ninety (90) calendar days from the date of the employee's loss of position. At the expiration of a ninety (90) day period, if the employee has not been recalled, then the employee loses all rights to be recalled.

**Section 2.**    It is hereby understood by all parties that the client has the ultimate right to reject or deny the placement of the in-home care providers recommended to him/her by the Employer.

9

## ARTICLE 19
## SENIORITY/LAYOFF/RECALL

**Section 1.**     For purposes of this Agreement seniority is defined as the length of time from an employee's most recent date of hire with Employer. Seniority accrues during the time an employee is on an approved leave of absence. Benefits are not earned when an employee is on a leave of absence. An employee loses all seniority when employment is terminated.

**Section 2.**     In the event of a layoff to reduce the work force the Employer will provide the union 30 days advance notice and set a meeting with the union to discuss the layoff. This excludes those circumstances where a client care situation results in a lack of work on a temporary basis.

**Section 3.**     Employees will be laid off in the following order:

      (a)    Probationary employees
      (b)    Part-time employees, beginning with the least senior employee
      (c)    Full-time employees, beginning with the least senior employee

**Section 4.**     If employees are recalled such recall shall be in reverse order of their layoff. Employees shall have recall rights for a period of 180 calendar days following the date of layoff.

**Section 5.**     In the event there is a conflict between employees over vacation scheduling or other scheduling matters the employee with the greatest seniority shall be given preference.

## ARTICLE 20
## JOB BIDDING

**Section 1.**     The Employer shall provide by mail bargaining unit employees with a listing of all bargaining unit job vacancies that the Employer decides to fill. Job listings shall specify the minimum qualifications, the geographical area and full or part-time status.

**Section 2.**     All employees covered by this Agreement that are eligible to bid on the job vacancy may bid by completing an Employment Application and submitting it to the Employer. Such a bid must be received or be postmarked by the fifth working day following the posting date.

**Section 3.**     An employee covered by this Agreement is eligible to bid on a job vacancy provided the employee:

      (a)    Has completed his/her probationary period.
      (b)    Has not successfully bid on a posted job vacancy within the prior six (6) months.

10

(c)    A probationary employee may bid on a job opening and will be considered if there are no regular employees submitting bids for the open position.

**Section 4.**    Of those employees making application, the employee meeting the requirements with the most seniority shall be awarded the job.

**Section 5.**    If the successful bidder rejects the position after being notified of his or her award, then that person is prohibited from bidding on another job vacancy for a six (6) month period following his or her rejection of the offered position.

# ARTICLE 21
## PAID TIME OFF (PTO)

**Section 1.**    Employees who work one-thousand five-hundred sixty (1,560) hours, in a year will earn PTO days, based on current hours per day worked. Employees will be entitled to use PTO days during the following year. Employees must use PTO days within the program year.

**Section 2.**    PTO will be paid at the employee's current rate of pay. Unused PTO shall not carry over and will not be paid out. If an employee resigns from employment or is terminated for any reason, they forfeit any and all PTO days.

**Section 3.**    PTO must be requested from and approved in advance by the immediate supervisor. Should a conflict arise regarding preference of PTO, is shall be resolved on the basis of seniority with the senior employee(s) being granted PTO preference.

**Section 4.**    Any employee of the bargaining unit who has unused leave of any type under Article 21, Section 4 of the current contract (expiration date of 4-30-04), shall be entitled to carry it forward under the new contract. All current provisions of utilizing said leave shall remain in effect. No additional leave shall accrue.

**Section 5.**    The following shall be the schedule for the number of PTO days each employee shall earn based on years of service:

| | |
|---|---|
| 0-1 year | 0 PTO days |
| 1-5 years | 3 PTO days |
| 6-10 years | 4 PTO days |
| 11 plus years | 7 PTO days |

11

## ARTICLE 22
## HOLIDAYS

**Section 1.**    The employer shall provide the following paid holidays for non-probationary members of the bargaining unit:   New Years Day, Memorial Day, Labor Day, Thanksgiving Day and Christmas Day.  Employees must work the last full scheduled day before the holiday and the first full scheduled day after the holiday to receive pay.  If a holiday falls on a Saturday, it shall be observed on Friday; if the holiday falls on Sunday, the holiday shall be observed on Monday.

**Section 2.**    Holiday pay shall not exceed eight (8) hours and shall be based on an employees regular work schedule.  For example, employees working a six (6) hour schedule shall receive six (6) hours holiday pay.

## ARTICLE 23
## BEREAVEMENT LEAVE

**Section 1.**    An employee may request up to 3 consecutive days off without pay, with one being the day of the funeral, in the event of the death of their parent, stepparent, children, stepchildren, spouse or sibling, and 1 day off without pay for the funeral of a grandparent, or grandchildren.  Proof of death may be requested by the Employer and must be provided if requested.  Additional days may be requested and granted at the discretion of the Executive Director.

## ARTICLE 24
## MEDICAL LEAVE OF ABSENCE

**Section 1.**    The Employer agrees to abide by the provisions of the Family and Medical Leave Act of 1993 (FMLA) when required by law.

## ARTICLE 25
## MILITARY SERVICE

**Section 1.**    Employees entering the Armed Forces, Reserves or National Guard shall be afforded full rights of reinstatement as may be required by federal and state law, as amended from time to time.  Employees shall provide an appropriate statement to the employer, as evidence of the requirements for active military service.

12

## ARTICLE 26
## UNION LEAVE

**Section 1.**     Up to two (2) delegates, as designated by the Union, may request up to two (2) days off without pay per year for union functions.  Requests shall be made, in writing, at least 30 calendar days in advance.

## ARTICLE 27
## HEALTH & SAFETY

**Section 1.**     The Employer will make reasonable precautions within its control for the safety and health of employees during their hours of work.  Employees shall immediately report all injuries, accidents and any potential health and safety hazard to their supervisor.

## ARTICLE 28
## WAGES

**Section 1.**     Effective with the first payroll period following the signing of this agreement, the following wage shall apply to all members of the bargaining unit:

| | |
|---|---|
| 0 -1 year | $5.25/hour |
| 1 -5 years | $5.50/hour |
| 6 -10 years | $5.75/hour |
| 11+ years | $6.00/hour |

**Section 2.**     There shall be no employee mileage reimbursement.

**Section 3.**     Any employee who currently has 0 - 5 years of service at the signing of the contract will receive an hourly wage of $5.60.  Otherwise, the above wage scale shall apply.

**Section 4.**     All amounts listed in the above wage scale in the above section 1 and section 3 will be increased by $.05 (five cents) on May 01, 2005 and May 01, 2006.

13

## ARTICLE 29
## HEALTH AND WELFARE
## SEIU HEALTH INSURANCE PLAN

**Section 1.**     **Coverage:**

a.) The Employer agrees to provide all employees covered by this Agreement at Mingo Community Action Partnership, Inc. at address 815 Alderson Street PO Box 1406 Williamson, West Virginia 25661 and, when such coverage is elected, their eligible dependents (only applies to those employees who have family coverage now) with Health and Welfare benefits under the Service Employees International Union Health and Welfare fund ( hereinafter "fund")as hereinafter provided.

b. Effective upon ratification and eligibility, all bargaining unit employees covered by this Agreement shall be eligible , after probation period, for the following coverage: Stand - Alone Prescription Drug ($10.00 co-pay), and Dental / Vision.

**Section 2.**     **Term:**

The Employer agrees to become and remain a participating employer in the Fund throughout the terms of this Collective Bargaining Agreement, including any extensions thereof.

**Section 3.**

**(A) (1) Contributions:**

The Employer agrees to contribute to the Fund 100% of the cost of the stand alone prescription drug ($10.00 co-pay) and dental/vision insurance plan for all employees who are covered under Section 1 (b). The cost of the insurance for the first year only is  for single coverage $37.22 and $82.93 for family coverage. The second and third year of the agreement is addressed under 3 (A) (2).

**(A) (2) Maintenance of Benefits :**

The parties acknowledge that the required contribution rate(s) for benefit plans and additional benefits provided by the Fund may change because of plan experience and other actuarial considerations and that the Trustees may after the effective date of this agreement, and at their exclusive discretion, determine the rates required to maintain the level of benefits agreed to by the parties. In the event such rates determined by the Trustees are greater than the rates provided for in Section 3 (a) (1), above the Employer agrees to pay, effective on or after receipt of notice from the Trustees of any required change, the higher amount as though such rate had been specified in Section 3 (a) (1).

(B)     Monthly contributions required by this provision shall be paid to the Fund on or before the fifteenth of the month for which coverage is intended or on or before

14

such other dates as the Trustees may hereafter determine.

( C )   Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Trustees of the Fund.

(D)    In the event that contributions are made on a monthly basis, there shall be no pro-ration of contributions in the event an employee does not receive compensation for an entire month.

### Section 4    Plan of Benefits

(a)    Initial Benefits
The contribution rate(s) set out in Section 3 (a) (1) of this Agreement anticipates that, initially covered employees and their dependents will be enrolled Stand - Alone Prescription Drug ($10.00 co-pay), and Dental / Vision.

(B)    Later Contract years:
The Partes acknowledge that the required contribution rate(s) for benefit plans and additional benefits provided by the Fund may change from year to year because of plan experience and other actuarial considerations on the collective bargaining agreement anniversary date following June 30 each year after the effective date of this agreement.

### Section 5. Trust Agreement

The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of the Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that Agreement, including collection policies. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board.

### Section 6.    The Employer agrees to cooperate with the Trustees of the Fund in distributing Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining and providing such census data as may be required by the Fund Administrator.

### Section 7.   Audit

The Employer agrees to permit auditors authorized by the Fund to inspect and review any of its records necessary to ensure compliance with this Agreement and to forward such records or true copies thereof to the Fund's auditors upon request.

### Section 8.   Delinquencies

15

(A)    The Employer agrees that, should it default or become delinquent in any of its obligations to the Fund set forth in this Article, it shall be liable for such penalties and cost as may be provided for by the Trust Agreement and resolutions of the Trustees including but not limited to, a late payment, interest, liquidated damages, and all cost of collection including reasonable attorney's and accounting fees.

**Section 9.**    The undersigned parties acknowledge that the provisions of the Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this agreement.  Such termination may be directed by the Trustees or a decline in the average number of hours reported per employee below that necessary to fully support the benefits offered, failure of the Employer to timely pay contributions, and expiration of a Collective Bargaining Agreement.

**ARTICLE 30**
**RETIREMENT**

**Section 1.**    Bargaining unit employees shall participate in the Employer's current retirement plan administered by the West Virginia Public Employees Retirement System. Participation shall be under the same terms and conditions as all other employees of the Employer.

**ARTICLE 31**
**DISCIPLINE AND DISCHARGE**

**Section 1.**    Discipline shall be progressive, beginning with verbal warning and progressing to a written warning, suspension without pay, and discharge.  In all cases, the employee being disciplined shall have a Union representative and or delegate present if they so request, and may utilize the grievance procedure to remove improper disciplinary actions from their personnel record.  The Employer shall forward to the Executive Board Member of the Local chapter notice and/or copies of all suspensions and discharges.

a.    The company shall not impose discipline in the presence of other employees, consumers, or public except in extraordinary situations, which pose a serious, immediate threat to the safety, health or well-being of others.  The company will impose discipline for minor infractions within ten (10) working days of the occurrence.

b.    An employee may be placed on unpaid administrative leave or reassigned while an investigation is being conducted.  In cases of alleged client abuse or neglect, the

16

employee may be reassigned only if he/she agrees to the reassignment; otherwise administrative leave will be used. If after an investigation, it is determined the administrative leave is unjust, the employee will receive full back pay and be made whole in every way.

c.    In the event of suspension of an employee is determined to be appropriate discipline, the period of suspension shall not exceed three (3) regular scheduled workdays.

## ARTICLE 32
## GRIEVANCE PROCEDURE

**Section 1.**    A "grievance" is defined as any complaints or disputes arising between employees and the employer over interpretation, application or alleged breach of this Agreement. The Employer and the Union agree that the prompt adjustment of a grievance is essential. Every effort shall be made to settle the matter in accordance with the grievance procedure outlined below.

**Section 2.**    Grievance(s) shall be processed and resolved in the following manner:

**Step A: Written**
A grievance must be filed within three (3) days of the alleged incident. Grievances submitted by mail must be postmarked within three (3) days of the alleged incident. The incident causing the grievance shall be taken up for disposition between the aggrieved employee(s), his/her Union delegate and the immediate Supervisor or Designee as follows:

The grievance shall be on a form provided by the Union stating the issue(s) of the grievance including the articles and sections of the contract breached, if applicable. It must also include a proposed remedy. The immediate Supervisor or Designee shall have three (3) workdays to respond in writing to the delegate in writing after receipt.

**Step B: Written**
If the grievance is not satisfactorily resolved by the immediate Supervisor or Designee at Step A, the grievant(s), his/her delegate, Grievance Chair, shall in writing, state the proposed resolution is unacceptable and shall file the same with the  Executive Director or Designee, within three (3) days of receipt of the answer of the immediate Supervisor, the Executive Director or Designee shall have three (3) workdays from receipt of Step B to respond, in writing to the grievance.

**Section 3.**    The Union shall notify the Employer, in writing, within ten (10) workdays of the written response of the Executive Director of its' intent to arbitrate. The Union and the Agency agree that either party may request neutral mediation provided by the Federal Mediation and Conciliation Service (FMCS) on a non-binding voluntary basis within ten (10) workdays of

17

the Executive Director Response.

Any grievance settlement, whether it represents a compromise between the parties or a full granting of the grievance, shall be reduced to writing and signed at the grievance mediation session. Any grievance, which is withdrawn, shall be done so in writing and signed at the grievance mediation session.

**Section 4.**    All days referred to herein are understood to mean working days and time limitations specified shall be deemed to be exclusive of Saturdays, Sundays, and Holidays. The time limitations of this Article may be extended only by mutual agreement in writing by the Executive Director or Designee and Union Representative. A grievance may be mailed and the postmark date shall be the date used for time limitations.

**Section 5.**    The failure by either party to follow the time limitations of this Article, without the written agreement of an extension of time shall result in the grievance being deemed, denied.

## ARTICLE 33
## ARBITRATION

**Section 1.**    Grievances not satisfactorily resolved by the Grievance Procedure may be submitted to arbitration by the filing of a written notice identifying the grievance. The notice shall be personally delivered to the other party or mailed a registered or certified mail within ten (10) working days after issuance of the Employer's final answer. At the same time, the party requesting arbitration shall request a panel of arbitrators from the Federal Mediation and Conciliation Service ("FMCS"). If the notice is not so delivered or mailed to the other party and the FMCS, the grievance shall be deemed to have been satisfactorily resolved on the basis of the Employer's Step 3 answer. No more than one grievance shall be submitted to any arbitrator at any one time without mutual agreement of the parties.

**Section 2.**    Upon written request from either party, the Federal Mediation and Conciliation Service ("FMCS") shall provide the Union and the Employer with a list of seven (7) arbitrators. Within ten (10) days of receipt of the panel, the Union Organizer or his/her designee and the Employer Representative shall arrange to select an arbitrator. The selection of the arbitrator shall be by alternate strike method with the party striking first determined by lot or other mutually agreeable means at the time of selection. The parties may agree to a different selection method. Notwithstanding the foregoing, if either party is dissatisfied with the panel of arbitrators obtained from the Federal Mediation and Conciliation Service, then he dissatisfied party must notify the other party within ten (10) days of receipt of the panel and a second panel shall be requested. The foregoing procedure for selecting an arbitrator shall apply upon receipt of the second panel. No additional panels shall be requested.

18

**Section 3.**     The fees and expenses of the Arbitrator shall be paid in full by the losing party.  In each case the arbitrator shall designate the "losing" party.  In the event the arbitrator's award is not susceptible to such interpretation, the arbitrator shall allocate his/her fees and expenses between the parties.  Other incidental expenses related to the arbitration hearing, such as the cost of a hearing room or hearing transcript, shall be shared equally by the parties.  Each party shall pay its own expenses with respect to its witnesses, the preparation and presentation of its case.

**Section 4.**     The arbitrator shall have jurisdiction only over disputes arising out of grievances as defined herein.  The arbitrator shall not add to, subtract from or in any way modify any of the provisions, terms, or conditions of this Agreement.

**Section 5.**     In cases involving employee discipline, if such action is found to be justified, the employee shall suffer the penalty imposed without further recourse.

**Section 6.**     The arbitrator's award shall be made in writing, and shall be rendered as soon as possible following the close of the hearing, and shall be final and binding on all parties.

**Section 7.**     If either party presents a question of arbitrability to the arbitrator, the arbitrator shall rule on the question of arbitrability prior to ruling on the case.

**Section 8.**     Time spent investigating a grievance, attending grievance meeting, or arbitration will not be counted as time worked for compensation purposes.

## ARTICLE 34
## STRIKES AND LOCKOUTS

**Section 1.**     During the term of this Agreement, or any extension thereof, the Employer agrees not to lockout its employees covered by this Agreement and the Union and its members agree not to tacitly or actively engage in any mass resignation or concerted withdrawal of services, strike, slow down, picketing, boycotting, hand billing or any other interference with work of any kind; or to interfere in any manner with the Employer's business or operations or sanction any such actions.

**Section 2.**     In the event any bargaining unit employee(s) engage in conduct prohibited by Section 1 of this Article, it shall be the responsibility of the Union to immediately notify the employee(s) that such conduct violates this contract and subjects the employee(s) to disciplinary action including discharge.  The Union shall immediately disavow and condemn such activity and take all possible steps to bring such activity to an immediate end and to prevent any reoccurrence of any such activity in violation of this Article.  The Union will also, within twenty-four (24) hours of notice of such conduct, advise the Employer in writing that such conduct is unauthorized and in violation of the contract and set forth all steps taken or to be taken by the Union to end such

contract violation by the employees involved.

## ARTICLE 35
## SUCCESSORS

**Section 1.**    In the event of a change in the name or status as a West Virginia corporation, the Employer will give the Union sixty (60) days prior notice, if possible.

## ARTICLE 36
## JURY DUTY

**Section 1.**    The employer shall provide each employee with supplemental pay for the pay such employee loses while on jury duty. When the employees jury duty coincides with her work schedule, the jury duty pay the employee receives from the court will be deducted from the amount the employer is obligated to pay under this provision.

## ARTICLE 37
## MISCELLANEOUS

**Section 1.**    The employer shall provide a secure drop box at their Agency where employees may leave communications after hours.

**Section 2.**    The employer shall provide all supplies needed to mail the required paperwork to the employer. Employees must have their time sheets postmarked no later than the immediate Saturday following the pay period end. The employer has the right to mail payroll checks on the Thursday following the pay period end.

**Section 3.**    Employees shall receive a health and welfare allowance in the amount of $175.00 dollars for single coverage and $225.00 dollars for family coverage. Family coverage will only be provided to those employees who currently have family coverage. The required contributions will be withheld from the health and welfare allowance with the balance included in the employees payroll check. If required contributions exceed the health and welfare allowance during the contract, the excess cost will be paid by the employees. The employer has the right to deduct excess costs from the employees paycheck.

20

## ARTICLE 38
## DURATION

**Section 1.** This Agreement shall become effective upon signing by each party and shall continue in full force and effect through April 30, 2007.

**Section 2.** Thereafter, the Agreement shall remain in full force and effect from year to year unless either party, in writing, shall notify the other party not less than ninety (90) days prior to the expiration date of the intent to terminate, modify or negotiate a successor agreement.

**Mingo Community Action Partnership, Inc.**

_____
**Name**

_____
**Title**

_____
**Date**

**The Health Care and Social Union, SEIU, AFL-CIO District 1199 WV/KY/OH**

_____
**Name**

_____
**Title**

_____
**Date**

21

# EXHIBIT 2

RESTATED AGREEMENT AND DECLARATION OF TRUST

SERVICE EMPLOYEES INTERNATIONAL UNION
HEALTH AND WELFARE FUND

# TABLE OF CONTENTS

Page

ARTICLE I: DECLARATION OF TRUST ........................... 1

    1. NAME .................................................. 2
    2. PURPOSE ............................................... 2
    3. TERM OF TRUST AGREEMENT ............................... 2

ARTICLE II: DEFINITIONS ................................... 2

    1. "HEALTH AND WELFARE PLAN" or "PLAN" ................... 2
    2. "COLLECTIVE BARGAINING AGREEMENT" ..................... 3
    3. "THE UNION" ........................................... 3
    4. "CONTRIBUTIONS" ...................................... 3
    5. "PARTICIPATING EMPLOYEE" .............................. 3
    6. "BENEFICIARY" ......................................... 4
    7. "BENEFIT PROGRAM" ..................................... 4
    8. "PARTICIPATING EMPLOYER" .............................. 4
    9. "PARTICIPATING EMPLOYER ASSOCIATION" .................. 4
   10. "PARTICIPATNG LABOR ORGANIZATIONS" OR "LABOR
       ORGANIZATIONS" ..................................... 4
   11. "SIGNATORY PARTIES" .................................. 4
   12. "SPECIAL AGREEMENT" .................................. 5
   13. "SUBSCRIPTION AGREEMENT" ............................. 5
   14. "TRUSTEES" OR "BOARD OF TRUSTEES" .................... 5
   15. "TRUST" OR "TRUST FUND" OR "FUND" .................... 5
   16. "ADMINISTRATOR" ...................................... 5
   17. "WELFARE BENEFITS" ................................... 6

ARTICLE III: THE TRUSTEES ................................. 6

    1. THE BOARD OF TRUSTEES ................................. 6
    2. STATUTORY CAPACITIES OF TRUSTEES ..................... 6
    3. AGENTS FOR SERVICE OF PROCESS ........................ 7
    4. NUMBER OF TRUSTEES ................................... 7
    5. TERMS OF TRUSTEES .................................... 8
    6. APPOINTMENT OF SUCCESSOR EMPLOYER TRUSTEES ......... 8
    7. APPOINTMENT OF SUCCESSOR UNION TRUSTEES ............
    8. INDIVIDUALS DISQUALIFIED FROM SERVING
       AS TRUSTEES ........................................ 8
    9. ACCEPTANCE OF APPOINTMENT BY TRUSTEES .............. 9
   10. TERMINATION OF APPOINTMENT BY
       APPOINTING-ENTITY .................................. 9
   11. TERMINATION OF APPOINTMENT FOR FAILURE TO
       ATTEND MEETINGS .................................... 9
   12. TERMINATION OF APPOINTMENT FOR CONVICTION
       OF A CRIME ......................................... 10
   13. TERMINATION OF APPOINTMENT FOR MENTAL
       INCAPACITY ......................................... 10
   14. RESIGNATION OF APPOINTMENT ........................... 10

-i-

                                                                    Page

15. VACANCIES ...............................................   10
16. RETURN OF BOOKS AND RECORDS .............................   10

ARTICLE IV:  ADMINISTRATION OF THE FUND .....................   11

    1. MANNER OF VOTING ......................................   11
    2. CONSTITUTION OF A QUORUM ..............................   11
    3. MOTIONS ...............................................   11
    4. REGULAR MEETINGS ......................................   12
    5. SPECIAL MEETINGS ......................................   12
    6. ACTION WITHOUT A FORMAL MEETING .......................   12
    7. ARBITRATION OF DEADLOCKED ISSUES ......................   13
    8. ELECTION OF CHAIRMAN AND SECRETARY ....................   14
    9. DUTIES OF CHAIRMAN AND SECRETARY ......................   14
   10. AUTHORIZED SIGNATURES .................................   15
   11. COMPENSATION AND EXPENSES .............................   16
   12. BENEFITS TO TRUSTEES NOT PROHIBITED ...................   16

ARTICLE V:  PARTICIPATION ...................................   16

    1. EMPLOYEES & EMPLOYERS ENTITLED TO PARTICIPATE ........   16
    2. BARGAINING UNITS ENTITLED TO PARTICIPATE .............   17
    3. OTHER BARGAINING UNITS................................   18
    4. NON-BARGAINING UNIT EMPLOYEES OF
       PARTICIPATING EMPLOYERS...............................   18
    5. STAFF EMPLOYEES OF PARTICIPATING
       LABOR ORGANIZATIONS...................................   19
    6. STAFF EMPLOYEES OF PARTICIPATING
       EMPOYER ASSOCIATIONS..................................   19
    7. TRUST FUND EMPLOYEES.................................   20
    8. UNAUTHORIZED PARTICIPATION;
       NO WAIVER BY TRUSTEES...............................   20

ARTICLE VI:  TRUSTEE RESPONSIBILITIES .......................   21

    1. GENERAL DUTY - RECEIPT OF CONTRIBUTIONS AND
       CREATION AND ADMINISTRATION OF PLAN ................   21
    2. COMPLIANCE WITH THE INTERNAL REVENUE CODE ...........   21
    3. BASIS OF PAYMENTS TO AND FROM TRUST FUND ............   21
    4. APPLICATION OF TRUST FUND ASSETS ....................   22
    5. FIDUCIARY STANDARDS .................................   22
    6. DEPOSITS ............................................   22
    7. INVESTMENTS .........................................   23
    8. SPECIFICALLY PERMITTED INVESTMENTS ..................   23
    9. TITLE TO INVESTMENTS AND OTHER ASSETS ...............   24
   10. FIDELITY BOND .......................................   25
   11. RECORDS .............................................   25
   12. ANNUAL AUDIT ........................................   26

-ii-

Page

13. PLAN DESCRIPTION ....................................  26
14. ANNUAL REPORT ......................................  26
15. DOCUMENTS TO BE EXAMINED OR FURNISHED ..............  27
16. PROCEDURE FOR ESTABLISHING FUNDING POLICY ..........  28

ARTICLE VII:   TRUSTEE POWERS ...........................  28

1. GENERAL POWER .......................................  28
2. SPECIFIC POWERS OF DISCRETIONARY ....................  29
3. AMENDMENT OF PLAN ...................................  29
4. DESIGN OF THE PLAN ..................................  29
5. CREATION OF BENEFIT PLAN............................  30
6. ADDITIONAL BENEFIT PLANS AND PROGRAMS...............  30
7. MEANS OF PROVIDING BENEFITS.........................  31
8. FACILITY OF PAYMENT.................................  31
9. SELF-PAYMENTS BY EMPLOYEES..........................  31
10. AN ADMINISTRATIVE AGENT OR ADMINISTRATOR...........  32
11. BANKING SERVICES....................................  32
12. OTHER PROFESSIONAL AND NON-PROFESSIONAL HELP........  33
13. OBTAINING OF NECESSARY PREMISES,
       EQUIPMENT, AND SUPPLIES ........................  33
14. INSURANCE...........................................  33
15. BORROWING MONEY.....................................  34
16. RESERVE FUNDS.......................................  34
17. PAYMENTS OF TAXES...................................  35
18. REFUNDS OF CONTRIBUTIONS ERRONEOUSLY PAID..........  35
19. PROSECUTION OF LEGAL ACTIONS OR CLAIMS.............  35
20. DEFENSE OF LEGAL ACTIONS AND CLAIMS................  36
21. COMPROMISE OF LEGAL ACTIONS OR CLAIMS..............  36
22. PENALTIES FOR FALSE OR WITHHELD INFORMATION........  37
23. CORRECTION OF ERRORS...............................  37
24. SUBSCRIPTION AGREEMENTS............................  38
25. PARTICIPATION IN NON-PROFIT  EDUCATIONAL
       ORGANIZATIONS...................................  38
26. RECIPROCITY........................................  38
27. COORDINATED ADMINISTRATION........................  39
28. MERGERS............................................  39
29. INTERPRETATION AND APPLICATION OF DOCUMENTS........  40

ARTICLE VIII:   ALLOCATION OR DELEGATION OF TRUSTEE
                RESPONSIBILITIES .......................  40

1. ALLOCATION OF RESPONSIBILITIES TO COMMITTEES .......  40
2. DELEGATION OF INVESTMENT RESPONSIBILITIES ..........  42
3. DELEGATION OF OTHER RESPONSIBILITIES ...............  42
4. REVIEW OF PERFORMANCE ..............................  43

ARTICLE IX:   CONTRIBUTIONS AND COLLECTIONS ............  43

1. CONTRIBUTION REPORTING FORMS .......................  43

Page

2. CONTRIBUTION DUE DATE ............................ 43
3. DELINQUENT CONTRIBUTIONS ......................... 44
4. AUDIT OF EMPLOYER BOOKS AND RECORDS .............. 44
5. LIQUIDATED DAMAGES AND INTEREST ................. 45
6. ATTORNEY FEES AND COURT COSTS ................... 46
7. VENUE OF COLLECTION ACTIONS ..................... 46
8. PROTECTION OF EMPLOYEES IN CASES OF DELINQUENCY .... 47
9. COORDINATION WITH PROVISIONS IN COLLECTIVE
    BARGAINING AGREEMENTS ........................... 47

ARTICLE X:  HEARING AND ARBITRATION PROCEDURES ............ 48

1. PROCEDURES TO BE FOLLOWED ........................ 48
2. HEARINGS BEFORE BOARD OF TRUSTEES ................ 48

ARTICLE XI:  LIMITATIONS ................................. 49

1. LIABILITIES AND DEBTS OF TRUST FUND .............. 49
2. LIABILITIES AND DEBTS OF PARTICIPATING PARTIES .... 49
3. PERSONAL LIABILITIES OF TRUSTEES ................. 49
4. JUDGMENTS AGAINST TRUST FUND ..................... 50
5. PARTICIPATING PARTIES' RIGHTS ................... 50
6. CESSATION OF PARTICIPATION ...................... 51
7. PROTECTION OF TRUST FUND, CONTRIBUTIONS, AND
    BENEFITS ....................................... 51
8. RELIANCE UPON WRITTEN DOCUMENTS ................. 51
9. AGENTS OF TRUST FUND ............................ 52

ARTICLE XII:  MISCELLANEOUS ............................. 52

1. TRUST FUND OFFICES .............................. 52
2. APPLICABLE LAWS AND REGULATIONS ................. 53
3. SERVICE IN MORE THAN ONE FIDUCIARY CAPACITY ..... 53
4. NOTICES ........................................ 53
5. SEVERABILITY ................................... 54
6. TITLES AND WORDS ............................... 54

ARTICLE XIII:  AMENDMENTS AND TERMINATIONS .............. 54

1. AMENDMENTS ..................................... 54
2. TERMINATION .................................... 54
3. ALLOCATION UPON TERMINATION .................... 55

SIGNATORY PARTIES ...................................... 56

SERVICE EMPLOYEES INTERNATIONAL UNION
HEALTH AND WELFARE FUND

Restated Agreement and Declaration of Trust

INTRODUCTION

Whereas, the signatory Trustees (or their predecessors in interest) did, by trust agreement executed on May 1, 1969, and amended on October 6, 1976 and October 11, 1983, establish and maintain a joint labor-management employee welfare benefit trust fund known as the Service Employees International Union Local 82 Labor Management Medical Trust Fund, and

Whereas, the Trustees have also determined to revise and restate the existing trust instrument, as amended, to take into account contemporary needs and conditions,

Now, therefore, the signatory parties, the Trustees, do hereby review and restate the existing trust instrument as set forth in the following pages.

ARTICLE I

1.   NAME

The Trustees hereby declare that the Trust Fund as previously established and maintained by them shall be known as the Service Employees International Union Health and Welfare Fund.  The Trustees may hold property, enter into contracts and in all matters act in behalf of the Trust Fund in such name. The Trust Fund may sue or be sued in such name.

2.   PURPOSE

The purpose of the Trust Fund is to provide an entity to which contributions from participating employers and contributions from participating employees (if any) can be paid and through which the Trustees can administer one or more employee welfare benefit plans and/or programs for the participating employees on whose behalf the contributions have been paid and their beneficiaries.  The Trustees shall administer the Trust Fund for the exclusive purpose of providing benefits to participants and their beneficiaries as decided by the Trustees, and shall further provide the means for defraying reasonable expenses of administering and operating the Plan in accordance with this Trust Agreement.

3.   TERM OF TRUST AGREEMENT

This Trust Agreement shall be effective as of February 27, 1989, and shall continue indefinitely until such time as it may be terminated in accordance with the provisions of Article XIII hereof.

ARTICLE II

DEFINITIONS

The following definitions shall govern in this Trust Agreement:

1.   "HEALTH AND WELFARE PLAN" or "PLAN" -- this Restated Agreement and Declaration of Trust or the entire Health and

Welfare Plan arrangement including the benefit programs and other provisions set forth in the Plan documents, depending upon context.

2.    "COLLECTIVE BARGAINING AGREEMENT" -- a written agreement between a participating employer and the Union and any supplement, amendment, continuation, or renewal thereof, by the terms of which the employer is obligated to make contributions to the Fund.

3.    "THE UNION" -- the Service Employees International Union, AFL-CIO, CLC and its affiliated Local Unions.

4.    "CONTRIBUTIONS" -- the payments required of a participating employer, or of a participating employee (if any), pursuant to the terms of a collective bargaining agreement or special agreement, for the purpose of providing health and welfare benefits to the employees covered by said agreements and their beneficiaries; also the self-payments made by participating employees pursuant to any self-payment rules adopted by the Trustees.

5.    "PARTICIPATING EMPLOYEE" -- any individual employed by a participating employer who is covered by a collective bargaining agreement, or special agreement, and for whom an employer makes contributions to the Fund and any individual who may have been so employed but is subsequently laid off, terminated, or retired.

6.    "BENEFICIARY" -- Any dependent of a PARTICIPATING EMPLOYEE, who is entitled to benefits, as defined in the Plan;

- 3 -

and any person designated by a participating employee or dependent, or by the terms of the Plan, to receive benefits upon the death of such participating employee or dependent.

7.  "BENEFIT PROGRAM" -- One of the three benefit arrangements which form the Plan and which are administered by the Trustees and for which Trust Fund assets are used to pay benefits.

8.  "PARTICIPATING EMPLOYER" -- any sole proprietorship, partnership, unincorporated association, corporation, or joint venture that is party to a collective bargaining agreement with the Union and that satisfies the requirements of Article V hereof.

9.  "PARTICIPATING EMPLOYER ASSOCIATION" -- any employer association that is party to a collective bargaining agreement and that satisfies the requirements of Article V hereof.

10.  "PARTICIPATING LABOR ORGANIZATIONS" OR " LABOR ORGANIZATION" -- labor organizations or organizations that represent employees in collective bargaining with employers and that satisfy the requirements of Article V hereof.

11.  "SIGNATORY PARTIES" -- the parties who have created this Trust Agreement and whose signatures appear on the last page hereof (or their successors).

12.  "SPECIAL AGREEMENT" -- a written agreement between a participating employer and the Trustees, and any supplement, amendment, continuation, or renewal thereof, that obligates the employer to make contributions to the Fund for the purpose of

- 4 -

providing health and welfare benefits to the employees covered by the said agreement.

13. "SUBSCRIPTION AGREEMENT" -- a written agreement by which a participating employer acknowledges its obligation to make contributions to the Trust Fund and subscribes to the terms and provisions of this Trust Agreement.

14. "TRUSTEES" OR "BOARD OF TRUSTEES" -- the Trustees of the fund and their successors. "Employer-appointed Trustees" shall mean the Trustees appointed by the Employer in accordance with this Agreement and Declaration and the collective bargaining agreement. "Union-appointed Trustees" shall mean Trustees appointed by the Union in accordance with this Agreement and Declaration. "Trustees" shall mean the Employer-appointed Trustees and Union-appointed Trustees collectively.

15. "TRUST" OR "TRUST FUND" OR "FUND" -- the entity created by this Trust Agreement, and all property and money held by such entity, including all contract rights and records.

16. "ADMINISTRATOR" -- the person, persons or entity retained by the Trustees to act as the administrative agent for the Fund and Plan.

17. "WELFARE BENEFITS" OR "EMPLOYEE WELFARE BENEFITS" -- the benefits provided under the Plan.

ARTICLE III

THE TRUSTEES

1.    THE BOARD OF TRUSTEES

The Health and Welfare Trust and the Health and Welfare Plan shall be administered by a Board of Trustees composed of equal numbers of Employer-appointed Trustees and Union-appointed Trustees.  The Trustees currently are:

| For the Union | For the Employer |
|---|---|
| John J. Sweeney | Jerry Davis |
| Arline M. Neal | Clement Hipple |
| Richard W. Cordtz | Louis Brady |
| Mary Martin | David Tolson |

2.    STATUTORY CAPACITIES OF TRUSTEES

For purposes of complying with Section 302(c)(5)(B) of the Labor Management Relations Act of 1947, the participating employers shall be represented, in the administration of the Fund, by the Employer-appointed Trustees; and the participating employees  shall be represented by the Union-appointed Trustees.

For purposes of complying with the various provisions of the Employee Retirement Income Security Act of 1974, the Trustees  shall be considered as "named fiduciaries," "fiduciaries," the "plan administrator," and the "plan sponsor," as those terms are used in the Act.

3.    AGENTS FOR SERVICE OF PROCESS

Each Trustee shall be considered as an agent of the Trust Fund for the purpose of accepting service of legal process,

- 6 -

provided that the Trustees may designate their administrative agent, or another person, as agent of the Trust Fund for this purpose.

4.    NUMBER OF TRUSTEES

The number of Trustees shall be as follows:

(a)   four trustees appointed by the Service Employees International Union, AFL-CIO, CLC; and

(b)   four trustees appointed by representatives of the participating employer or employers.

The number of Alternate Trustees, who shall serve in the event that one or more of the Trustees is not able to attend a trustees' meeting or otherwise serve, shall be as follows:

(a)   one Alternate Trustee shall be appointed by the Service Employees International Union, AFL-CIO; and

(b)   one Alternate Trustee shall be appointed by representatives of the participating employer or employers.

When serving in lieu of a regular Trustee, an Alternate Trustee shall exercise all of the powers and shall be subject to the responsibilities and obligations of a regular Trustee.

5.    TERMS OF TRUSTEES

The term of Employer Trustees and Alternate Employer Trustees shall be three years.  Union Trustees and Alternate Union Trustees shall serve until removed as Trustees by the Service Employees International Union or until resignation or

- 7 -

death.

6.    APPOINTMENT OF SUCCESSOR EMPLOYER TRUSTEES

a.    In the event of the termination of appointment, resignation, or death of an Employer Trustee or Alternate Employer Trustee, a successor Employer Trustee or Alternate Employer Trustee shall be elected by majority vote of the participating employers.  A successor Trustee or Alternate Trustee pursuant to this provision shall serve until the end of term of his or her predecessor Trustee.

b.    Successors to Employer Trustees or Alternate Employer Trustees whose terms have expired shall be elected by majority vote of the participating employers.  Each employer shall have one vote.

7.    APPOINTMENT OF SUCCESSOR UNION TRUSTEES

In the event of the termination of appointment, resignation, or death of a Union Trustee or Alternate Union Trustee, a successor Union Trustee or Alternate Union Trustee, shall be appointed by the International President of the Service Employees International Union.

8.    INDIVIDUALS DISQUALIFIED FROM SERVING AS TRUSTEES

No individual who has been convicted of any the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974, as amended, shall serve as a Trustee

- 8 -

during the period of disqualification specified in the statute.

9.   ACCEPTANCE OF APPOINTMENT BY TRUSTEES

Each Trustee and Alternate Trustee shall sign a document accepting his appointment as Trustee and agreeing to abide by the terms and provisions of this Trust Agreement.

10.  TERMINATION OF APPOINTMENT BY APPOINTING-ENTITY

Except as may otherwise be specified in Sections 6 or 7 of this Article, the appointment of a Trustee or Alternate Trustee may be terminated by the entity which originally made the appointment according to such entity's internal rules, procedures, or practices.

The termination of a Trustee's or Alternate Trustee's appointment shall be effective upon the termination date specified in a written notice of termination, addressed to the Chairman and Secretary of the Trustees, prepared by the appointing entity.

11.  TERMINATION OF APPOINTMENT FOR FAILURE TO ATTEND MEETINGS

The appointment of a Trustee shall be automatically terminated if such Trustee or Alternate Trustee fails to attend three (3) consecutive  meetings of the Trustees without being excused from attendance by specific action of the remaining Trustees noted in the minutes, at the discretion of the remaining Trustees.

12.  TERMINATION OF APPOINTMENT FOR CONVICTION OF A CRIME

The appointment of a Trustee or Alternate Trustee shall be automatically terminated if such Trustee or Alternate Trustee is convicted of any of the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974, as amended.

13.  TERMINATION OF APPOINTMENT FOR MENTAL INCAPACITY

The appointment of a Trustee or Alternate Trustee shall be automatically terminated if such Trustee is declared mentally incompetent by a court decree.

14.  RESIGNATION OF APPOINTMENT

A Trustee or Alternate Trustee may resign his appointment at any time.  Such resignation shall be effective upon the resignation date specified in a written notice of resignation addressed to the Chairman and Secretary of the Trustees.

15.  VACANCIES

No vacancy in the position of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust Fund so long as a quorum exists as specified in Article IV, Section 2, hereof.

16.  RETURN OF BOOKS AND RECORDS

In the event of the termination of appointment,

- 10 -

resignation, or death of a Trustee, the Trustee (or his legal guardian, heirs, or personal representative) shall, upon the request of the Chairman or the Secretary of the Trustees, forthwith turn over to the Chairman or Secretary any and all records, books, documents, monies, and other property in the possession of the Trustee, or under his control, that belong to the Trust Fund or that were received by him in his capacity as Trustee.

## ARTICLE IV
### ADMINISTRATION OF THE HEALTH AND WELFARE FUND

1.  MANNER OF VOTING

Any action to be taken by the Trustees shall be determined by a vote of a majority of the Trustees present at a meeting of the Board of Trustees regularly and duly called.

2.  CONSTITUTION OF A QUORUM

To constitute a valid regular or special meeting of the Trustees a quorum must be present. A quorum shall consist of four trustees, at least one of whom is an Employer Trustee and one of whom is a Union Trustee.

3.  MOTIONS

Any Trustee, including the Chairman or Secretary, may offer or second any motion or resolution presented for the Trustees'

consideration.

4.   REGULAR MEETINGS

The Trustees shall hold regular periodic meetings
consistent with the needs of Trust Fund business, provided that
there shall be at least two (2) regular meetings held during
each calendar year.  The Trustees shall determine the time and
place of all such meetings.

5.   SPECIAL MEETINGS

Either the Chairman or the Secretary or any two (2)
Trustees (one Employer Trustee and one Union Trustee) may call
a special meeting of the Trustees by giving written notice to
all the other Trustees of the time and place of such meeting at
least ten (10) days before the date set for the meeting,
provided that ten (10) days advance notice shall not be
necessary if all Trustees are agreeable to an earlier meeting.

6.   ACTION WITHOUT A FORMAL MEETING

The Trustees may take action without a formal meeting by
means of (a) a conference telephone call, arranged by the
Chairman, the Secretary or the Administrator, in which all
Trustees participate, (b) the presentation of a written motion
or resolution sent to all Trustees by the Secretary or the
Administrator and the subsequent obtaining of Trustee votes on
the motion or resolution in telephone calls placed to each

- 12 -

Trustee by the Secretary or the Administrator, or (c) the presentation of a written motion or resolution sent to all Trustees by the Secretary or the Administrator and the subsequent obtaining of Trustee votes on the motion or resolution in letters sent by each Trustee to the Secretary or the administrative agent.

Any such action shall be reported in the minutes of the next formal meeting of the Trustees.

7.    ARBITRATION OF DEADLOCKED ISSUES

In the event the Employer Trustees and Union Trustees should deadlock on any matter submitted for their concurrence, the dispute may be referred by either group of Trustees to an impartial arbitrator in accordance with the labor arbitration rules of the American Arbitration Association.  A deadlock shall be deemed to occur when there is a tie vote on any motion before the Trustees.

The Trustees shall attempt to agree on a joint submission of the statement of the issue in dispute.  However, if the Trustee cannot jointly agree upon such a statement, each group of Trustees shall submit to the arbitrator, in writing, its version of the issue in dispute.  As part of his award, the arbitrator shall state his determination of the issue in dispute.  The expense of any such arbitration, including any court proceedings relating thereto, and the fee of the arbitrator and the reasonable attorney and witness fees of the

parties, shall be chargeable to the Trust Fund.

The decision and award of the arbitrator shall be final and binding upon the Trustees and upon all parties whose interests are affected thereby.

The procedure specified in this Section shall be the sole and exclusive procedure for the resolution of deadlocked issues.

8.    ELECTION OF CHAIRMAN AND SECRETARY

The Trustees shall elect one of their number as Chairman and one as Secretary.  One of these officers shall be an Employer Trustee and one shall be a Union Trustee.

The Chairman and the Secretary shall each hold office indefinitely, provided that when a particular Chairman and Secretary have held office for two (2) years, or at any time thereafter, the Employer Trustees or the Union Trustees may obtain, on their request, a rotation of offices, or a new election, or both.

A Chairman or Secretary may resign his or her office at any time.  Such resignation shall be effective upon the resignation date specified in a written notice of resignation addressed to the remaining Trustees.  In case of the resignation, death, or termination of appointment of either the Chairman or the Secretary, there shall be a new election of both officers.


9.    DUTIES OF CHAIRMAN AND SECRETARY

The Chairman shall chair the meetings of the Trustees,

- 14 -

shall appoint all committees, and shall carry out such other duties as the Trustees may assign.

The Secretary, in the absence of the Chairman, shall act in the place of the Chairman and perform the Chairman's duties. The Secretary shall also advise the Trustees as to all correspondence and financial reports pertaining to the Trust Fund and shall keep minutes or records of all meetings, proceedings, and actions of the Trustees, provided that these particular responsibilities may be delegated to the Administrator or to other of the professional or non-professional service providers retained by the Trustees.

10.  AUTHORIZED SIGNATURES

The Chairman or the Secretary or any two authorized Trustees (one Employer Trustee and one Union Trustee) shall sign all negotiable instruments, certificates, contracts, government reports, and other legal documents on behalf of the Trust Fund, provided that the authority for signing negotiable instruments may be delegated to the Administrator, corporate trustee (if any), depository bank, or custodian bank.  All persons doing business with the Trust Fund may rely on such signatures.

If the Trust Fund issues benefit checks to participating employees or their beneficiaries, the signatures of the Chairman and Secretary may be affixed thereto by facsimile signature device, under safeguards determine by the Trustees.

- 15 -

11.  COMPENSATION AND EXPENSES

No Trustees shall receive any compensation from the Trust Fund for services as a Trustee except as may be allowed under the Employee Retirement Income Security Act of 1974, as amended, and as may be authorized by the Trustees.

Each Trustee shall be reimbursed out of the Trust Fund for all reasonable expenses properly and actually incurred by him in the administration of the Trust Fund.

The Trustees shall establish the procedures and conditions for the payment  of compensation (if any) and for the reimbursement of expenses.

12.  BENEFITS TO TRUSTEES NOT PROHIBITED

Nothing in this Trust Agreement shall prohibit a Trustee from receiving any benefits under the terms of the Plan, if he or she is otherwise eligible for the same.

ARTICLE V

PARTICIPATION

1.  EMPLOYEES & EMPLOYERS ENTITLED TO PARTICIPATE

Employees represented by the Union shall be allowed to participate in the Trust Fund.  Any employer or employer association with whom the Union enters into a collective bargaining agreement requiring contributions to the Trust Fund shall be a participating employer with respect to the Trust

- 16 -

Fund.

2.   BARGAINING UNITS ENTITLED TO PARTICIPATE

The following labor organizations (or their successors), and the employers and employer associations with whom such labor organizations enter into collective bargaining agreements requiring contributions to the Trust Fund, and the employees in the bargaining units covered by such agreements, shall be allowed to participate in the Trust Fund:  Service Employees International Union Local 82 and any other Local Union affiliated with the Service Employees International Union.

The Trustees, however, shall have the authority to decline or terminate the participation of a particular bargaining unit if (a) the labor organization and the employer fail to provide the Trustees with a copy of their collective bargaining agreement; (b) the language of the contributions provisions of the collective bargaining agreement does not meet the requirements established by the Trustees (if any); (c) the employer fails to submit a subscription agreement binding it to this Trust Agreement, if required; (d) the negotiated contribution rate is lesser, or greater, than the contribution rate supporting a particular benefit program then being administered by the Trustees, provided that the Trustees, in their discretion, may accept the different contribution rate, and establish different eligibility rules or benefit formulas for the employees affected; or (e) there exist other facts and

- 17 -

circumstances that, in the Trustees' discretion, justify a declination or termination of participation.

3.   OTHER BARGAINING UNITS

The Trustees shall have the authority to permit labor organizations (other than those specified above) and employers and employer associations with whom such labor organizations bargain, and the employees in the bargaining units covered by collective bargaining agreements, to participate in the Trust Fund.

The participation of such bargaining units shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

4.   NON-BARGAINING UNIT EMPLOYEES OF PARTICIPATING EMPLOYERS

The Trustees shall have the authority to enter into special agreements directly with participating employers who are contributing for their bargaining unit employees, by the terms of which such an employer agrees to make contributions to the Trust Fund so that non-bargaining unit employees of the employer can be covered by the Plan.  To the extent allowed by law, the Trustees may deem corporate owner-officers, sole proprietors, and partners of participating employers as "participating employees" and permit them to be included as non-bargaining unit employees.

The acceptance of such special agreements shall be entirely

discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

5.    STAFF EMPLOYEES OF PARTICIPATING LABOR ORGANIZATIONS

The Trustees shall have the authority to enter into special agreements directly with participating labor organizations by the terms of which such a labor organization agrees to make contributions to the Trust Fund so that the employees of the labor organization can be covered by the benefit plans provided through the Trust Fund.

The acceptance of such special agreements shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

6.    STAFF EMPLOYEES OF PARTICIPATING EMPLOYER ASSOCIATIONS

The Trustees shall have the authority to enter into special agreements directly with participating employer associations by the terms of which such an employer association agrees to make contributions to the Trust Fund so that the employees of the employer association can be covered by the benefit plans provided through the Trust Fund.

The acceptance of such special agreements shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

- 19 -

7.    TRUST FUND EMPLOYEES

The Trustees shall have the authority to allow participation by the employees of the Trust Fund (if any), or of the SEIU National Industry Pension Fund and SEIU Vacation Fund in the Health and Welfare Plan provided through the Trust Fund. The cost of such coverage shall be chargeable to the fund to whose employees Health and Welfare coverage is extended.

Such coverage shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

8.    UNAUTHORIZED PARTICIPATION; NO WAIVER BY TRUSTEES

It is expected that participating employers will submit contributions only on behalf of employees whom the Trustees have authorized to participate in this Health and Welfare Plan. The receipt by the Trust Fund of contributions which may be submitted  on behalf of individuals who are not eligible to participate shall not prevent the Trustees from declining or terminating the participation of such individuals nor shall it constitute a waiver of any of the provisions of this Article or of the Plan.

- 20 -

## ARTICLE VI

## TRUSTEE RESPONSIBILITIES

1.  GENERAL DUTY - RECEIPT OF CONTRIBUTIONS AND CREATION
    AND ADMINISTRATION OF PLAN

It shall be the general duty of the Trustees to receive the contributions from participating employers and any other income or assets that they may receive and, with such, to create and administer the Plan for the participating employees.

Additionally, the Trustees shall have the specific duties set forth in this Trust Agreement and such other duties as are imposed upon them by Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, and other applicable laws.

2.  COMPLIANCE WITH THE INTERNAL REVENUE CODE

The Trustees shall administer the Trust Fund and the Plan so that, to the extent allowed in the Internal Revenue Code, employer contributions are tax deductible and the Trust Fund remains tax exempt.

3.  BASIS OF PAYMENTS TO AND FROM TRUST FUND

The basis on which contributions of participating employers are made shall be a specified in the underlying collective bargaining agreement or special agreement.  The basis on which benefits are paid out of the Trust Fund shall be as specified in the Health and Welfare Plan.

- 21 -

4.  APPLICATION OF TRUST FUND ASSETS

As required by Section 403 (c)(1) of the Employee
Retirement Income Security Act of 1974, as amended, the assets
of the Trust Fund shall never inure to the benefit of any
participating employer and shall be held for the exclusive
purposes of providing benefits to participating employees and
defraying reasonable expenses of administering the plan.

5.  FIDUCIARY STANDARDS

As required by Section 404(a)(1)(A) and (B) of the Employee
Retirement Income Security Act of 1974, as amended, the Trustees
shall discharge their duties and administer the Trust Fund
assets solely in the interest of the participating employees and
defraying reasonable expenses of plan administration.

In carrying out their duties the Trustees shall act with
the care, skill, prudence, and diligence under the circumstances
then prevailing that a prudent man acting in like capacity and
familiar with such matters would use in the conduct of an
enterprise of a like character and with like aims.

6.  DEPOSITS

The contributions, or any other monies which the Trustees
may receive, shall be deposited in one or more banks or similar
financial institutions supervised by the United States or a
state, pending the allocation of such monies for the payment of

current benefits and expenses, or for investment. Such monies may be commingled, on a temporary basis, with monies belonging to other related trust funds.

7. INVESTMENTS

The Trustees shall invest all contributions or other monies not required for the payment of current benefits and expenses. The Trustees may invest and reinvest in bank accounts, savings and loan accounts, securities, mortgages, deeds of trust, notes, commercial paper, real estate, insurance contracts, and in such other property, real, personal, or mixed, as they deem prudent, provided that in the making of investments the Trustees shall diversify such investments as required by Section 404(a)(1)(C) of the Employee Retirement Income Security Act of 1974, as amended, so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. Further, no investment shall be made which would constitute a "prohibited transaction" within the meaning of Section 406 of such Act, provided that the Trustees shall have the authority to apply to the Secretary of Labor for a conditional or unconditional exemption from any of the "prohibited transaction" rules, as they deem necessary in the administration of the Trust Fund and the Plan.

8. SPECIFICALLY PERMITTED INVESTMENTS

In the event the Trustees designate one or more banks or

similar financial institutions supervised by the United States or a state to serve as custodian of the trust assets, or as corporate trustee, or in another fiduciary capacity, the monies belonging to the Trust Fund may be invested in the accounts of such bank or institution, provided that such accounts bear a reasonable interest rate.

Further, the monies of the Trust Fund may be invested in (a) a common or collective trust fund, or pooled investment fund, maintained by a bank or trust company supervised by the United States or a state, or (b) in a pooled investment fund of an insurance company, even though such bank, trust company, or insurance company is a party-in-interest as that term is designated in Sections 3(14) of the Employee Retirement Income Security Act of 1974, as amended, provided that the bank, trust company, or insurance company receives not more than reasonable compensation for managing such an investment.

9.  TITLE TO INVESTMENTS AND OTHER ASSETS

Title to all investments or other assets of the Trust fund shall be maintained in the name of the Trust Fund, provided that for convenience in transferring stocks, bonds, or other negotiable securities, title to such securities may be held in the name of the Trust Fund's custodian bank or its nominee.

Except as may be authorized by regulation of the Secretary of Labor, the indication of ownership of all investments and other assets of the Trust Fund shall not be maintained outside

- 24 -

the jurisdiction of the district courts of the United States.

10.    FIDELITY BOND

The Trustees shall procure a fidelity bond in the amount required by Section 412(a) of the Employee Retirement Income Security Act of 1974, as amended, covering each Trustee or other person who receives, handles, disburses, or otherwise exercises custody or control of any of the funds or other property of the Trust Fund.  The cost of such bond shall be chargeable to the Trust Fund, provided that, if such bond covers persons other than the Trustees or their employees (if any), and if there is an additional premium for the coverage for such other persons, the additional premium shall be chargeable to such other persons.

11.    RECORDS

The Trustees shall maintain records of their administration of the Trust Fund, including records of all receipts and disbursements, all investments purchased or sold, the text of the Plan and all benefit programs, all employee eligibility listings, all minutes of Trustee meetings, and all correspondence.  No such record shall be destroyed except upon the specific action of the Trustees, and destruction shall not be directed until a period of seven (7) years has elapsed from the date of the record was created.

12. ANNUAL AUDIT

The Trustees shall engage an independent qualified public accountant and shall authorize such accountant to conduct an annual financial examination of the Trust Fund, as required by Section 103(a)(3)(A) of the Employee Retirement Income Security Act of 1974, as amended. The cost of such examination shall be chargeable to the Trust Fund.

A statement of the result of each such examination shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

13. PLAN DESCRIPTION

The Trustees shall prepare and file with the Department of Labor a plan description, a summary plan description, and any modifications or changes in the information contained in such description, as required by Section 102 of the Employee Retirement Income Security Act of 1974, as amended.

The Trustees shall also furnish to participating employees copies of the summary plan description and copies of any modifications or changes in the information in such description, as required by Section 104(b)(1) of such Act.

14. ANNUAL REPORT

The Trustees shall prepare and file with the Department of Labor an annual report, as required by Section 103 of the Employee Retirement Income Security Act of 1974, as amended.

- 26 -

The Trustees shall also furnish to participating employees portions of the annual reports as required by Section 104(b)(3) of such Act.

15.  DOCUMENTS TO BE EXAMINED OR FURNISHED

The Trustees shall make copies of (a) this Trust Agreement, (b) the plan description, (c) the latest annual report, (d) the applicable collective bargaining agreement, and (e) any other contracts or instruments under which the Health and Welfare Plan is established or operated available for examination by participating employees in the Trust Fund office, as required by Section  104(b)(2) of the Employee Retirement Income Security Act of 1974, as amended.

The Trustees shall, upon written request by a participating employee, furnish to the participating employee a copy of (a) this Trust Agreement, (b) the plan description, (c) the latest up-dated summary plan description, (d) the latest annual report, (e) any terminal report, (f) the applicable collective bargaining agreement, and (g) any other contracts or instruments under which the plan is established or operated, as required by Section  104(b)(4) of such Act.  Such copies shall be furnished within thirty (30) days of this request.  The Trustees may impose a reasonable charge for such copies as may be allowed by regulation of the Secretary of Labor.

- 27 -

16.  PROCEDURE FOR ESTABLISHING FUNDING POLICY

The Trustees shall meet periodically with the Plan's consultant, the independent qualified public accountant, and such other Trust fund advisers as may be appropriate, for the purpose of anticipating the short run and long run financial needs of the Trust Fund.  Thereupon, the Trustees shall adopt an appropriate funding policy and method for the Trust Fund.

The funding policy and method shall be considered by the Trustees in the management of Trust Fund investments.  In the event the management of Trust Fund investments has been delegated to an investment manager, the funding policy and method shall be considered by such manager.

ARTICLE VII

TRUSTEE POWERS

1.  GENERAL POWER

Except as may be expressly limited by the terms of this Trust Agreement, the Trustees shall have full and exclusive authority and discretion to control and administer the Trust Fund and the Health and Welfare Plan as well as to interpret both the terms of this Trust Agreement and the terms or rules of any plan established by the Trustees.

The authority of the Trustees not only encompasses the specific powers recited in the various paragraphs of this Trust Agreement but also includes the general power to do all actions, including the expenditure of Trust Fund monies, which they may deem necessary to carry out the purposes of this Trust

- 28 -

Agreement.

The Trustees may implement their powers through the adoption of appropriate motions, resolutions, or administrative rules and regulations.

2. SPECIFIC POWERS DISCRETIONARY

The recitation of specific powers in this Trust Agreement shall not be interpreted as compelling the exercise of any such power. The exercise of specific powers is discretionary with the Trustees.

3. AMENDMENT OF PLAN(S)

The Trustees shall have the authority to amend the Plan or any plan hereafter adopted, including amendments that expand, restrict, or terminate all or part of the rules relating to eligibility for benefits, or to the amount and nature of such benefits, as they determine. Amendments may be made on a prospective or retroactive basis in accordance with applicable laws.

4. DESIGN OF THE PLAN(S)

The Trustees shall have the authority to determine the provisions of the Plan(s), including the determination of the rules under which participating employees shall be eligible for benefits and the nature and amount of such benefits. The Trustees have the authority to make such determinations for each bargaining unit on an independent and individual basis. They

shall also have the authority to determine the eligibility and benefit rules which will apply to any class or classes of beneficiaries. If there are different contribution rates, the Trustees may establish different eligibility rules, or benefit formulas, for the participating employees who are affected thereby.

5.  CREATION OF BENEFIT PLANS

The Trustees shall have the authority to create and maintain an employee welfare benefit plan (or plans).

The Trustees shall have the authority to amend such benefit plan (or plans), or any plans hereafter adopted, including amendments that expand, restrict, or terminate all or part of the rules relating to eligibility for benefits, or to the amount and nature of such benefits, as they may determine. Amendments may be made on a prospective or retroactive basis in accordance with applicable law.

6.  ADDITIONAL BENEFIT PLANS AND PROGRAMS

The Trustees shall have the authority to create and administer additional employee welfare benefit plans, and additional benefit programs within the Plan, as may be lawful under Section 302(c) of the Labor Management Relations Act of 1947 and under Section 3(1) of the Employee Retirement Income Security Act of 1974, provided that such plans and programs are supported by employer or employee contributions.

- 30 -

7.    MEANS OF PROVIDING BENEFITS

The Trustees shall have the authority to provide the benefits, in whole or in part, directly from the Trust Fund or to contract with an insurance carrier, service organization, health maintenance organization or other entity, to underwrite or provide such benefits.

8.    FACILITY OF PAYMENT

The Trustees shall have the authority to adopt rules by the terms of which benefit payments owing to minors or incompetents may be paid instead to a person or institution providing care or other services to such minor or incompetent, even though a legal guardianship does not exist.  Benefit payments made under any such rules shall fully discharge the Trust Fund obligation to the minor or incompetent.

9.    SELF-PAYMENTS BY EMPLOYEES

The Trustees shall have the authority to include provisions in the benefit plans by the terms of which participating employees, during periods of strikes, lockouts, employer delinquencies, leaves of absence, disabilities, layoffs, termination, or retirement may be permitted to make contributions in their own behalf.

10.  AN ADMINISTRATIVE AGENT OR ADMINISTRATOR

The Trustee shall have the authority to retain, at the expense of the Trust Fund, one or more administrative agents or administrator(s) to assist the Trustees in the day to day administration of the Trust Fund and the Plan.  Such assistance may include the receipt and recording of contributions, the processing of delinquent accounts, the preparation of employee eligibility listings, the processing of benefit applications, the  payment of benefits, the maintenance of financial records, and the handling of routine communications.

The administrative agent may be a contract administrator or salaried administrator.  In the event the Trustees employ a salaried administrator they shall also have the authority to employ such additional administrative staff personnel as may be necessary.

The Trustees shall periodically review the performance of the administrative agent.

11.  BANKING SERVICES

The Trustees shall have the authority to retain, at the expense of the Trust Fund, one or more banks or similar financial institutions supervised by the United States or a state, to perform depository or custodial services, or to serve as corporate trustee or co-trustee, on behalf of the Trust Fund.

The Trustees shall periodically review the performance of

the banks which they have retained to perform the banking services.

12.    OTHER PROFESSIONAL AND NON-PROFESSIONAL HELP

The Trustees shall have the authority to retain, at the expense of the Trust Fund, one or more accountants, actuaries, attorneys, employee benefit plan consultants, investment managers, payroll auditors, and other professional or nonprofessional help, as they may deem necessary in the administration of the Trust Fund and the Plan.  Unless limited by the Employee Retirement Income Security Act of 1974, as amended, the retention of any such professional or non-professional help may be on a contract or salaried basis.

The Trustees shall periodically review the performance of their professional and non-professional help.

13.  OBTAINING OF NECESSARY PREMISES, EQUIPMENT, AND SUPPLIES

The Trustees shall have the authority to purchase or lease suitable premises and equipment and to purchase materials and supplies, at the expense of the Trust Fund, as they may deem necessary in the administration of the Trust Fund and the Plan.

14.  INSURANCE

The Trustees shall have the authority to purchase policies of insurance (liability, property damages, casualty, and errors and omissions) to protect the Trust Fund and to protect

- 33 -

themselves and their employees (if any) with respect to the activities on behalf of the Trust Fund as they may deem necessary. The cost of such insurance policies shall be chargeable to the Trust Fund, provided that, if such insurance policies cover persons other than the Trustees or their employees (if any), and if there is an additional premium for the coverage for such other persons, the additional premium shall be chargeable to such other persons.

Any policy of errors and omissions insurance which covers the Trustees individually shall contain a recourse clause as required by Section 410 (b)(1) of the Employee Retirement Income Security Act of 1974, as amended, provided that nothing herein shall prevent a Trustee (or an employer, employer association, or labor organization acting on his behalf) from purchasing for the Trustee or Trustees a waiver of the recourse clause or a separate policy insuring against such recourse.

15. BORROWING MONEY

The Trustees shall have the authority to borrow money for the Trust Fund, with or without security, as they may deem necessary in the administration of the Trust Fund and the Plan.

16. RESERVE FUNDS

The Trustees shall have the authority to maintain reasonable reserve funds for future contingencies as they may deem necessary in the administration of the Trust Fund and the

Plan.

17.  PAYMENTS OF TAXES

The Trustees shall have the authority to pay, at the expense of the Trust Fund, all real and personal taxes, and other taxes and assessments of any kind, that may be lawfully levied or assessed against the Fund.

18.  REFUNDS OF CONTRIBUTIONS ERRONEOUSLY PAID

The Trustees shall have the authority to adopt rules by the terms of which refunds of contributions may be made to a participating employer where the employer has paid such contributions in error, provided that employer refunds shall be made only as permitted by Section 403(c) of the Employee Retirement Income Security Act of 1974, as amended.

19.  PROSECUTION OF LEGAL ACTIONS OR CLAIMS

The Trustees shall have the authority to originate and maintain any legal actions or claims involving potential legal action, at the expense of the Trust Fund, as they may deem necessary in the administration of the Trust Fund and the benefit plan.  All such actions and claims shall be prosecuted in the name(s) of the Trust Fund, the Trustees or in the name of an assignee.

20. DEFENSE OF LEGAL ACTIONS AND CLAIMS

The Trustees shall have the authority to defend all legal actions, claims involving potential legal actions, and investigatory proceedings initiated against the Trust Fund or against one or more of the employees of the Trust Fund (if any) that relate to the administration of the Trust Fund or the Plan. Except as stated below, the defense of such actions, claims, and proceedings shall be at the expense of the Trust Fund.

If a final court decree establishes personal liability on the part of specified Trustees, administrative agents, or employees (if any) for breach of their fiduciary responsibilities, as provided in Section 409(a) of the Employee Retirement Income Security Act of 1974, as amended, and orders that the specified persons are to bear the expenses of their own defense, their attorney fees shall not be chargeable to the Trust Fund. If attorney fees and costs have already been charged to the Trust Fund, the specified persons shall be obligated to repay the Trust Fund their pro-rata share of such fees and costs.

21. COMPROMISE OF LEGAL ACTIONS OR CLAIMS

The Trustees shall the authority to compromise, settle, or release all legal actions or claims involving potential legal actions, in favor of or against the Trust Fund, on such terms and conditions as they may determine.

- 36 -

22. PENALTIES FOR FALSE OR WITHHELD INFORMATION

The Trustees shall have the authority to adopt rules and regulations by the terms of which reasonable penalties or forfeitures may be imposed upon participating employees who (a) falsify any information requested of them in the administration of the Trust Fund and the Plan, or (b) fail to provide requested information within a reasonable time.

23. CORRECTION OF ERRORS

It is recognized and acknowledged by all parties that the Trustees will provide benefits to participating employees based on Trust Fund records.  It is also recognized and acknowledged that such records could be incorrect due to (a) employers reporting individuals who are not eligible for participation, (b) employers reporting incorrect names or incorrect social security numbers, (c) employers reporting more (or less) than the hours or contributions required to be reported, (d) delinquent employer reports, (e) employees submitting incorrect social security numbers or false benefit applications, (e) recording or computation errors by the administrative agent, (f) computer errors, or (g) other similar circumstances.  The Trustees shall have the authority to correct the Trust Fund records and to terminate participation, benefits, or seek the recovery of benefit overpayments, as they may determine to be appropriate.

24. SUBSCRIPTION AGREEMENTS

The Trustees shall have the authority to create and distribute subscription agreements, at the expense of the Trust Fund, by the terms of which a participating employer acknowledges its obligation to make contributions to the Trust Fund and subscribes to the terms and provisions of this Trust Agreement.

25. PARTICIPATION IN NON-PROFIT EDUCATIONAL ORGANIZATIONS

The Trustees shall have the authority to participate in non-profit foundations, corporations, councils, committees, or other organizations which sponsor educational programs or provide educational materials pertaining to the administration of trust funds of this nature and of employee benefit plans. If the Trustees act to participate in any such non-profit organizations, the membership or participation fees of the organization shall be chargeable to the Trust Fund.

The Trustees shall also have the authority to purchase educational materials and to provide for the attendance of the Trustees, or of such of their employees (if any), as they may designate, at educational conferences and meetings. The costs of such materials and attendance shall be chargeable to the Trust Fund.

26. RECIPROCITY

The Trustees shall have the authority to enter into

reciprocal agreements with other employee benefit trust funds providing similar benefits to those provided through the Trust Fund, for the exchange of eligibility credits or monies or for the payment of pro-rata benefits, in order to protect employees who may terminate their participation in the Trust Fund and begin participation in a reciprocal trust fund and vice-versa.

27. COORDINATED ADMINISTRATION

The Trustees shall have the authority to coordinate the administration of the Trust Fund and of the Plan with the administration of other SEIU employee benefit trust funds and benefit plans, to such extent as they may determine.

28. MERGERS

It is recognized that at some time or times in the future, the Trustees may deem it in the best interest of the Trust Fund and of the participating employees, their beneficiaries, participating employers, employer associations and labor organizations to accept the merger of another employee welfare benefit trust fund into the Trust Fund, or to merge the Trust Fund into another employee welfare benefit trust fund.

In the event that another employee welfare benefit trust fund is to be merged into the Trust Fund, the Trustees shall have the authority to negotiate and consummate an appropriate merger agreement, and pursuant thereto, to accept a transfer - of the remaining monies, assets, and liabilities from the other

- 39 -

trust fund.

In the event the Trust Fund is to be merged into another
employee welfare benefit trust, the Trustees shall have the
authority to negotiate and consummate an appropriate merger
agreement, and pursuant thereto, to terminate the Trust Fund and
to transfer the remaining monies, assets, and liabilities to
the other trust fund. However, if the signatory parties hereto
are other than the Trustees, no merger of the Trust Fund into
another trust fund shall be negotiated or consummate without the
written approval of the signatory parties.

29. INTERPRETATION AND APPLICATION OF DOCUMENTS

The Trustees shall have the authority to interpret and
apply the provisions of this Trust Agreement, or of the Plan, or
of their own motions, resolutions, and administrative rules and
regulations, or of any contracts, instruments or writing that
they may have adopted or entered into.

ARTICLE VIII

ALLOCATION OR DELEGATION OF TRUSTEE
RESPONSIBILITIES

1. ALLOCATION OF RESPONSIBILITIES TO COMMITTEES

The Trustees may allocate to one or more committees of
Trustees all or part of the following responsibilities, with
full power to act: (a) the responsibility for managing the Trust
Fund investments (if not otherwise delegated to a qualified

investment manager); (b) the responsibility for reviewing and
determining benefit claims of participating employees; (c) the
responsibility for conducting hearings and issuing
determinations as provided for in Article X, Section 2, hereof;
(d) the responsibility for resolving questions or problems that
may encountered in connection with payroll auditing activities;
(e) the responsibility for resolving questions or problems that
may be encountered for in connection with the collection of
delinquent employer accounts; (f) the responsibility for
resolving problems that may be encountered in connection with
the day-to-day work of the Administrator or other agent; (g) the
responsibility for reviewing the performance of the qualified
investment manager (if any), and of the other professional
persons retained by the Trustees.

In the event the Trustees elect to allocate any of the
stated responsibilities they shall do so by the adoption of a
motion or resolution calling for the appointment of a committee
of Trustees (consisting of equal numbers of Employer Trustees
and Union Trustees) and specifying the particular responsibility
that is being allocated.  With respect to the responsibility
that is allocated, the committee shall have all the powers of
the full Board of Trustees.  Any action to be taken by the
committee shall be determined according to the voting formula
contained in Article IV, Section 1 hereof.  If the committee
members deadlock in any such matter submitted for their
concurrence, such matter shall be referred to the full Board of

Trustees for review and action.

Nothing contained herein shall in any way limit the authority of the Trustees to create additional committees for the purpose of conducting the affairs of the Trust Fund, provided that any such committee shall be empowered only to make recommendations with respect to the matters referred to it.

2.    DELEGATION OF INVESTMENT RESPONSIBILITIES

The Trustees may delegate all or part of their responsibilities for the management of the Trust Fund investments to one or more qualified investment managers, as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, as amended.  In the event the Trustees elect to delegate investment responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated investment manager.  The delegation shall be effective when the investment manager accepts the delegation and acknowledges in writing his status as a fiduciary with respect to the Trust Fund.

3.    DELEGATION OF OTHER RESPONSIBILITIES

The Trustees may delegate all or part of their responsibilities with respect to the administration of the Trust  Fund or the Plan (except investment responsibilities) to their administrative agent or to any other person whom they may designate for such purpose.

In the event the Trustees elect to delegate a particular responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated person. If the delegation involves a responsibility other than one which is ministerial in nature, the designated person shall also acknowledge in writing his status as a fiduciary with respect to the Trust Fund.

4.  REVIEW OF PERFORMANCE

In the event the Trustees elect to allocate or delegate Trustee responsibilities they shall periodically review the performance of the persons to whom such responsibilities have been allocated or delegated.

ARTICLE IX

CONTRIBUTIONS AND COLLECTIONS

1.  CONTRIBUTION REPORTING FORMS

The Trustees shall create and make available, at the expense of the Trust Fund, contribution reporting forms for the use of participating employers in making their contributions.

2.  CONTRIBUTION DUE DATE

All contributions shall be due by the date specified in the underlying collective bargaining agreement or special agreement. If the underlying collective bargaining agreement or special

agreement does not specify a due date, the Trustees shall have the authority to fix such a date.

3. DELINQUENT CONTRIBUTIONS

A participating employer shall be considered to be delinquent in the payment of contributions if it (a) fails to submit a contribution reporting form, and the contributions detailed therein, by the close of business on the due date, or (b) fails to submit contributions on behalf of all the employees for whom contributions are required by the underlying collective bargaining or special agreement, or (c) fails to compute properly the contributions according to the required contribution formula specified in the underlying collective bargaining agreement or special agreement.

The Trustees shall undertake reasonable efforts to collect known delinquent contributions and related claims.

4. AUDIT OF EMPLOYER BOOKS AND RECORDS

The Trustees shall have the authority, at the expense of the Trust Fund, to audit the payroll books and records of a participating employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund. Such payroll audit may be undertaken pursuant to a routine payroll audit program or on an individual basis.

Whenever a payroll audit is authorized, the participating

- 44 -

employer involved shall make available to the Trustees, or the
qualified public accountant designated by them, its payroll
books and records.  Such books and records shall include (a) all
records which the employer may be required to maintain under
Section 209.(a)(1) of the Employee Retirement Income Security Act
of 1974, as amended, and (b) time cards, payroll journals,
payroll check registers, cancelled payroll checks, copies of the
employer's federal, state, and local payroll tax reports, and
wages, or other compensation, of the employees or from which
such can be verified.

   In the event the payroll audit discloses that the
participating employer has not paid contributions as required by
the underlying collective bargaining agreement or special
agreement, the employer shall be liable for the costs of the
audit.  The Trustees shall have the authority, however, to
waive  all or part of such costs for good cause shown.


5.   LIQUIDATED DAMAGES AND INTEREST

   It is recognized and acknowledged by all parties, including
the participating employers, that the prompt and accurate
payment of contributions is essential to the maintenance of a
Trust Fund and the Plan and that it would be extremely
difficult, if not impossible, to fix the actual expense and
damage to the Trust Fund that would result from failure to of a
participating employer to pay the required contributions within
the time provided.  Therefore, if any participating employer

shall be delinquent in the payment of contributions such employer shall be liable, in addition, for liquidated damages of twenty percent (20%) of the amount of the contributions which are owed or one hundred dollars ($100.00) whichever is greater. In addition, the delinquent contributions shall bear interest, from the due date until they are paid, at the per annum rate charged by the Internal Revenue Service for late payment of taxes pursuant to Section 6621 of the Internal Revenue Code. The Trustees shall have the authority, however, to waive all or part of the liquidated damages or interest for good cause shown.

6.    ATTORNEY FEES AND COURT COSTS

Further, in event the Trustees place the account in the hands of legal counsel for collection, the delinquent employer shall be liable for reasonable attorney fees (with a minimum of $100.00) and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc. The Trustees shall have the authority, however, to waive all or part of the attorney fees or collection costs for good cause shown.

7.    VENUE FOR COLLECTION ACTIONS

In the event a collection suit is initiated, venue of such suit may be laid in any court of competent jurisdiction (federal or state) at the option of the Trustees.

8.    PROTECTION OF EMPLOYEES IN CASES OF DELINQUENCY

To protect participating employees in situations where they may be denied benefits because their employer is delinquent in the payment of contributions, the Trustees shall have the authority to extend eligibility credits to such employees or to direct the payment of benefits to them, or to their beneficiaries, in whole or in part, as they may determine.

The extension of eligibility credits or the payment of benefits shall not, however, release the delinquent employer from the responsibility for payment of the contributions owed.

9.    COORDINATION WITH PROVISIONS IN COLLECTIVE
      BARGAINING AGREEMENTS

In the event the underlying collective bargaining agreement contains provisions relating to delinquencies that specify additional remedies, or obligate the delinquent employer to greater amounts of liquidated damages, interest, or attorney fees than those set forth herein, the Trustees, at their option, may pursue the additional remedies or impose the greater charges.  The Trustees shall not be obligated, however, to pursue the collection of delinquent accounts through the grievance arbitration procedures (if any) provided in the underlying collective bargaining agreement.

ARTICLE X

HEARING AND ARBITRATION PROCEDURES

1. PROCEDURES TO BE FOLLOWED

The Trustees and the participating employees shall follow these hearing procedures.

The procedures specified in this Article shall be the sole and exclusive procedures available to a participating employee who is dissatisfied with an eligibility determination or benefit award, or who is otherwise adversely affected by any action of the Trustees.

2. HEARINGS BEFORE BOARD OF TRUSTEES

Any participating employee of a participating employer who applies for benefits and is ruled ineligible by the Trustees (or by a committee of Trustees, an administrative agent, insurance carrier, or other organization acting for the Trustees) or who believes (s)he did not receive the full amount of benefits to which (s)he is entitled, or who is otherwise adversely affected by any action of the Trustees, shall have the right to request the Trustees conduct a hearing in the matter, provided that the employee makes such a request, in writing, within sixty (60) days after being apprised of, or learning of, the action. The Trustees shall then conduct a hearing at which the participating employee shall be entitled to present his position and any evidence in support thereof. The participating employee shall be entitled to present his or her position and any evidence in

support thereof and may be represented at any such hearing by an attorney or by an other representative of the employee's choosing.  Thereafter, the Trustees  shall issue a written decision affirming, modifying, or setting aside the former action, which decision shall be final and binding on all parties.

## ARTICLE XI

## LIMITATIONS

1.  LIABILITIES AND DEBTS OF TRUST FUND

   1.  No signatory party or Trustee, and no participating employer, employer association, union, labor organization or employee shall be responsible for the liabilities or debts of the Trust Fund.

2.  LIABILITIES AND DEBTS OF PARTICIPATING PARTIES

   No participating employer, employer association, union or labor organization shall become responsible by reason of their participation in the Trust fund for the liabilities or debts of any other participating employer, employer association, or labor organization.

3.  PERSONAL LIABILITIES OF TRUSTEES

   No Trustee shall incur any personal liabilities in connection with the administration of the Trust Fund or the Plan, except for such liability that may be established in

- 49 -

accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974, as amended.

No Trustee shall be personally liable for a breach of fiduciary responsibilities if such breach was committed before he became a Trustee or after he ceased to be a Trustee.

4.   JUDGMENTS AGAINST TRUST FUND

Any money judgment against the Trust Fund shall be enforceable only against the Trust Fund entity and shall not be enforceable against any Trustee or other person, unless liability against the Trustee or other person, in his individual capacity, is established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974, as amended.

5.   PARTICIPATING PARTIES' RIGHTS

Except as specifically provided for in this Trust Agreement, or in the Plan, no participating employer, employer association, union, labor organization, or employee, nor any beneficiary or participating employee shall have any right, title, or interest in or to the Trust Fund, or in or to the contributions or in or to the benefits provided.

No participating employee shall be entitled to receive any part of the contributions in lieu of the benefits provided, nor shall a participating employee who does not qualify for benefits,  or his employer, have any claim to the contributions which may have been paid on his behalf.

- 50 -

6.   CESSATION OF PARTICIPATION

In the event a participating employer, employer association, union or labor organization, or groups thereof should cease their participation in the Trust Fund, there shall be no division or allocation of any of the monies or assets of the Trust Fund, except as may be required by law.

7.   PROTECTION OF TRUST FUND, CONTRIBUTIONS, AND BENEFITS

No part of the Trust Fund (including the contributions) or the benefits payable under the Plan shall be subject in any manner, by a participating employee or beneficiary, to anticipation, alienation, sale, transfer, assignment, encumbrance, or charge, and any such attempt shall be null and void.

Further, no part of the Trust Fund (including the contributions) or the benefits payable under the Plan shall be liable for the debts of a participating employee or beneficiary, nor be subject in any manner to garnishment, attachment, lien, charge, or any other legal process brought by any person against a participating employee or beneficiary, and any such attempt shall be null and void.

8.   RELIANCE UPON WRITTEN DOCUMENTS

The Trustees may act upon any written letter, report, certificate, instrument, or other document submitted to them by

- 51 -

any participating employer, union, labor organization or employee, or by any other person, where such document appears to be genuine and to be signed by the proper person or persons, and the Trustees shall be under no duty to make any investigation or inquiry as to any statement contained in such document.

9.    AGENTS OF TRUST FUND

The Trust Fund is an entity separate and apart from the participating employers, employer associations, and the Union. Accordingly, unless authorized in a motion or resolution of the Board of Trustees, no participating employer, employer association, or Union, nor any individual employed thereby, shall have any authority to act or function for or on behalf of the Trust fund or as an agent thereof.

Likewise, unless authorized in a motion or resolution of the Board of Trustees, no individual Trustee shall have any authority to act or function for or on behalf of the Trust Fund or as an agent thereof.

ARTICLE XII

MISCELLANEOUS

1.    TRUST FUND OFFICES

The Trust Fund shall maintain a principal office and sub offices, where necessary, in such locations as the Trustees may

- 52 -

determine.

2.    APPLICABLE LAWS AND REGULATIONS

This Trust Agreement shall be interpreted, and the Trust Fund shall be administered, in accordance with Section 302(c) of the Labor Management Relations Act of 1947, the Internal Revenue Code, the Employee Retirement Income Security Act, and the regulations pertinent thereto, and other applicable statutes and regulations, as such statutes and regulations presently exist or as they may hereafter be amended.

References herein to particular sections of the above mentioned statutes shall include any regulations pertinent to such sections and any subsequent amendments to such sections or regulations.

3.    SERVICE IN MORE THAN ONE FIDUCIARY CAPACITY

Any Trustee or other person who is a fiduciary may serve the Trust Fund in more than one fiduciary capacity.

4.    NOTICES

Any written notice permitted or required by this Trust Agreement shall be personally delivered to the person for whom it is intended, or sent to such person at his residence or business address by first class mail overnight mail or prepaid telegram.

- 53 -

5.    SEVERABILITY

If any provision of this Trust Agreement, or of the Plan, is held to be illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining portions of the Trust Agreement or of the Plan.

6.    TITLES AND WORDS

The titles of the various articles and sections of this Trust Agreement are inserted solely for convenience or reference and are not a part of, nor shall they be used to construe, any term or provision hereof.  Whenever any words are used herein in the masculine gender they shall be construed as though they were used in the feminine gender, and words in singular form shall be construed as though they were used in the plural form,  in all cases where they would apply.

ARTICLE XIII

AMENDMENTS AND TERMINATIONS

1.    AMENDMENTS

This Trust Agreement may be amended or modified at any time by a majority vote of the Trustees.

2.    TERMINATION

This Trust Agreement may be terminated at any time, by action of the Trustees, provided that, if the signatory parties

- 54 -

hereto are other than the Trustees, any such action shall require the written approval of the signatory parties (or their successors).

In any event, this Trust Agreement shall be automatically terminated upon the expiration of all collective bargaining agreements and special agreements requiring the payment of contributions to the Fund, provided that for purposes of this provision a collective bargaining agreement or special agreement shall not be deemed to have expired in a strike or lockout situation, unless such strike or lockout continues for more than six (6) months.

3.    ALLOCATION UPON TERMINATION

Upon termination of this Trust Agreement, the Trustees shall wind up the affairs of the Trust Fund.  Where the termination  occurs as a result of a merger, as authorized by Article VII, Section 25, any and all monies and assets remaining in the Trust  Fund, after payment of expenses, shall be transferred to the trust fund with which merger has been negotiated.  With respect  to any other termination, any and all monies and assets remaining in the Trust Fund, after the payment of expenses, shall be used for the continuance of the benefits provided by this Plan, until such monies and assets have been exhausted, unless some other disposition is required by law or regulations thereunder.

In no event shall any of the remaining monies or assets be

paid to or be recoverable by any participating employer, employer association, or union.

## SIGNATORY PARTIES

In witness whereof the parties have executed this instrument and have set their respective hands and seals this 27th day of February, 1989.

FOR THE SERVICE EMPLOYEES
INTERNATIONAL UNION, AFL-CIO,
CLC

FOR THE EMPLOYERS

- 56 -

# EXHIBIT 3

# STATEMENT OF POLICY FOR
## COLLECTION OF DELINQUENT CONTRIBUTIONS
(Revised November 15, 2003)

The Board of Trustees of the Service Employees International Union Health and Welfare Fund ("Fund") hereby adopts the following policy for the collection of delinquent contributions.

## SECTION 1
### General Policy

It is the policy of the Fund to make such diligent and systematic efforts as are appropriate under the circumstances to collect all employer contributions when they are due.

The Trustees have the legal right to exercise all remedies allowable under the Trust Agreement and under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), including but not limited to:

1.    The right to establish a date on which contributions are due and the format in which remittance reports supporting such contributions must be made, provided that such date and format requirements are not inconsistent with the terms of the collective bargaining agreement;

2.    The right to recover interest, liquidated damages, attorneys' fees, and any other expenses incurred by the Fund in collecting any delinquency;

3.    The right to establish a payroll review program;

4.    The right to conduct a review of the payroll records of all employees of the employers required to contribute to the Fund including, but not limited to, payroll ledgers, federal and state tax returns, IRS Form 941 and such other books and records of the employers that are necessary in order for the auditor to give an unqualified opinion that the proper contributions have been made;

5.    The right to require a participating employer to pay the cost of a payroll review plus interest, liquidated damages, attorneys' fees, and any other expenses incurred by the Fund in determining the amount of a delinquency and in collecting the delinquency;

6.    The right to require a bond or a cash deposit as security for prompt future payments due from an employer that has been habitually delinquent in its contributions to the Fund;

7.    The right to take all other steps and to perform all other acts that are necessary in order to collect contributions due to the Fund in a timely and expeditious manner; and

8.    The right to terminate a delinquent employer's participation in the Fund in appropriate circumstances, as determined by the Trustees in their sole discretion.

1

The procedures set forth herein shall be followed unless the Board of Trustees determines that they should be waived in a particular instance.

## SECTION 2
## Collection Procedure

In accordance with the Trust Agreement, ERISA, and the above declaration policy, the following procedures shall be required of all participating employers and the steps set out below shall be taken by the Fund Office to effectuate the collection of delinquent contributions.

1.     Contributions and supporting remittance reports are due on the date the employer's collective bargaining agreement requires payment. If the collective bargaining agreement does not state a due date, the due date is as follows: (a) if there is immediate coverage (available only to employers paying monthly rates), payment is due by the 15th day of the previous month (*i.e.*, contributions due by the 15th of December provide eligibility for January) or (b) if there is delayed eligibility (available to employers paying hourly or monthly rates), contributions are due by the 15th of the month after the month worked. (*i.e.*, contributions for the month of January are due by the 15th of February and provide eligibility for the month of March).

2.     Initial contributions and supporting remittance reports for employers who are newly subject to collective bargaining agreements (*i.e.*, for all months necessary to bring the employee group current) are due no later than the 15th day of the month following the month in which the collective bargaining agreement was executed by the bargaining parties.

3.     Retroactive contributions made on behalf of probationary employees shall be considered timely made if paid by the 15th of the month following the month in which the relevant probationary period expired.

4.     Contributions shall not be regarded as having been made timely unless accompanied by a completed remittance report in the format required by the Fund. If contributions are received without an acceptable remittance report, liquidated damages will be charged as set forth in paragraph 5 below. The Executive Director may approve the submission of reports in other forms, including on magnetic media, if he determines that providing reports in such form will not cause additional burden or expense to the Fund.

5.     If contributions and supporting remittance reports are not received by the end of the month in which they are due, the employer shall, in addition to the underlying delinquent contributions owed, be obligated to pay to the Fund interest. Interest shall be calculated from the due date for the delinquent contributions at the rate of ten percent (10%) per annum. In addition, the employer's employees will not be eligible for health coverage until the delinquency is paid. If contributions and supporting remittance report(s) are not received by the 30th day of the month following the month in which contributions are due, liquidated damages in the amount of 5% of contributions (or, if greater, $50), shall also be due from the employer. Notwithstanding the foregoing, interest calculated to be less

2

than one dollar ($1.00) shall not be charged. If an employer is delinquent, the Fund reserves the right to apply future payments to the oldest amount due first, even if the amount due must be estimated.

6.    If the contributions and remittance reports are not received by the last day of the month in which they were due, Fund office staff shall send a notice of delinquency to the employer requesting immediate payment of the delinquent contributions plus interest thereon. The notice shall demand immediate payment of all delinquent contributions and inform the delinquent employer that, unless the full amount due is received in the Fund's offices by the 30th day of the month following the month in which the contributions were due, the matter will be referred to the Fund's legal counsel for collection. The notice shall further advise the employer that contributions and supporting remittance reports must be received by that date if it wishes to avoid the imposition of liquidated damages.

7.    If the contributions and remittance report(s) are not received by the 30th day of the month following that in which the contributions were due, the delinquency shall be referred to legal counsel. Fund office staff also shall refer to counsel the cases of employers who have accrued balances of unpaid interest or liquidated damages that equal or exceed $1,000. Legal counsel shall follow the procedures set out in Section 3 of these Rules.

8.    If an employer makes payment of the amount of the delinquency but not payment of accrued interest and other amounts owed, acceptance of the payment shall not constitute a waiver of the Fund's claim for such accrued interest or other amounts.

9.    Any unpaid interest or liquidated damages shall be billed to the employer on the monthly delinquency letters or pre-printed remittance forms generated each month.

10.    The Executive Director may suspend collection procedures for liquidated damages and interest when extenuating circumstances are present. However, the Executive Director shall prepare a report to the Trustees of all such actions for their consideration at their next scheduled meeting. The Trustees may, at that time, waive such charges or direct that collection proceedings be reinstated.

11.    There shall be a charge for retroactive corrections (adding employees omitted from a prior report) made by any employer. The employer shall be charged $50 per each corrected remittance report submitted. This fee is imposed in recognition of the fact that the Fund will be required, and will incur expenses, to ensure proper benefit eligibility for any participant who is added retroactively. The employer will also owe interest from the date the contributions should have been paid at the rate of ten percent (10%) per annum.

12.    If an employer advises the Fund office that it has paid for coverage for an ineligible employee, the Trustees, in their sole discretion, may agree to grant the employer credit for one month's contributions for the month prior to the month that the Fund office is notified by the employer. The Trustees may delegate this authority to Fund office staff who will be authorized to grant such credits only if there is sufficient evidence that no benefits have been paid on the participant's behalf during the period at issue.

3

13.    If an employer believes it has overpaid contributions by paying an incorrect rate or making duplicate contributions for the same employee, the employer shall bring the matter to the attention of the Executive Director. If the Executive Director determines that the employer overpaid its contributions for a period of not more than three (3) months, and that such overpayment did not result in making an otherwise ineligible employee eligible for benefits, the Executive Director may, in his sole discretion, give the employer a credit for the amount of such overpayment. If a participating employer notifies the Executive Director that it has mistakenly remitted funds that were clearly intended to be paid to another entity and the employer has no outstanding balances owed to the Fund, the Executive Director may, in his sole discretion, give the employer a refund. If a participating employer notifies the Executive that it has mistakenly submitted excess contributions because of a mathematical error on its remittance report, the Executive Director may, in his sole discretion, give the employer a refund if the excess contributions are so great that the employer would be required to take a credit for more than three months. If the employer is not a participating employer at the time the request is made and the employer has no outstanding amounts due to the Fund, a refund may be made to the employer under any of the preceding circumstances. The Executive Director shall refer to the Trustees or the Delinquency Committee described in Section 3, Paragraph 9, any requests for credit or refund for overpayment occurring during a period of more than three (3) months' duration. The Trustees or the Delinquency Committee may, in their sole discretion, authorize credits or refunds for overpayments for periods of time longer than three (3) months. All credits or refunds for overpayments shall be issued only in a manner consistent with ERISA section 403(c)(2) and Internal Revenue Code section 401(a)(2). No interest shall be due to any employer on any overpayment. No refund of excess contributions shall be granted by the Fund without a written request for such refund having been received from the employer within two (2) years from the date that such excess contributions were received by the Fund. If the Fund notifies an employer that it has an overpayment, the employer must request a refund within six (6) months from the date the Fund notifies the employer.

## SECTION 3
### Legal Action and Settlement

1.    When a delinquency matter is turned over to the Fund's legal counsel for collection, legal counsel shall send a letter to the employer demanding the required remittance report, payment of the delinquent contributions and advising the employer of its liability for interest, liquidated damages and costs.

2.    In the event an employer fails to pay the delinquent contributions and submit the remittance report(s) within twenty (20) days after legal counsel's demand for payment, legal counsel shall initiate legal action for any delinquent contributions in excess of $500.00, unless legal counsel recommends a different course of action based upon pertinent factors which shall include, but are not limited to the following:

a.    the financial condition of the employer,

4

b.    the probability of collecting a judgement once it is obtained,

c.    the employer's past performance as a contributing employer,

d.    the amount of the delinquency,

e.    the length of time the delinquent amount has been owed,

f.    the likelihood that the costs of the suit will exceed the recovery; and

g.    any other factor that, in the discretion of the legal counsel, may have a material bearing on the collection of the delinquent contributions.

Legal counsel, where appropriate, shall also file a charge under the McNamara O'Hara Service Contract Act with the Department of Labor where the employees for whom the contributions are due are performing work covered by the Service Contract Act.

Any recommendation by legal counsel against initiating suit to collect delinquent contributions shall be submitted to the Board of Trustees. A lawsuit shall not be commenced pending action of the Trustees on such recommendation. The Board of Trustees reserves the right to reject a recommendation by legal counsel and to authorize the commencement of a suit.

3.    Legal counsel is authorized to enter into settlement negotiations with delinquent employers. Without further approval of the Board of Trustees, legal counsel is authorized to settle claims against delinquent employers in instances where the delinquent employer promises immediate payment of the delinquent contributions owed, interest thereon, attorney's fees and costs. Any proposed settlement which waives or compromises those amounts must be approved by the Board of Trustees. It shall be the responsibility of Fund Counsel to advise the Fund whether, and when, to reinstate any previously waived charges.

4.    Legal counsel has the authority to reject any proposal for settlement that contemplates payment of amounts due over a period of time or if its acceptance would result in collection of less than the total amount owed. Such rejection shall be subject to the Board of Trustee's subsequent review.

5.    Any settlement may postpone the collection of interest, liquidated damages, or attorney's fees until a subsequent delinquency by the same employer, if the collection of such amounts would involve unwarranted expense or risk to the Fund. Such a written settlement providing for nonpayment of interest, late payment penalty, liquidated damages, costs or attorneys' fees may contain a reservation to the Trustees of the right to collect such amounts in the event the employer again becomes delinquent in paying contributions during a period not to exceed three (3) years after the settlement is consummated.

6.    The Board of Trustees reserves the right to accept or reject an employer's proposal to

pay delinquent contributions, interest, liquidated damages, and attorneys' fees over a period of time and to compromise any claim or delinquent account as recommended by legal counsel; provided however, that any such decision to extend the time for payment, or to compromise the amount owing, complies with Prohibited Transaction Exemption 76-1 promulgated by the United States Department of Labor.

7.     Settlements calling for payments over time or compromising the amount owed, including interest, liquidated damages, attorneys' fees, or costs, must be in writing and signed on behalf of the Fund and the employer.

8.     Notwithstanding the procedures set out in this policy, the Board of Trustees or Executive Director may refer any delinquent account to legal counsel at an earlier or later date than provided for herein where circumstances warrant that the collection action be expedited or delayed.

9.     The Trustees may appoint a Committee of at least one (1) Employer and one (1) Union Trustee to act on behalf of the Board of Trustees, as provided for under this policy.

## SECTION 4
## Payroll Review Procedure

1.     The Board of Trustees shall randomly select such number of participating employers each year for payroll reviews as it deems from time to time to be appropriate. The Board of Trustees may, at its discretion, delegate the task of selecting which employers shall be reviewed pursuant to this policy to the Executive Director. The Board of Trustees, in the exercise of their discretion, may also choose for a payroll review an employer who was not randomly selected.

2.     Unless the Trustees determine otherwise, the period covered by the payroll review shall be not less than one (1) year.

3.     The right of the Fund to conduct a review of an employer's records shall survive the termination of an employer's collective bargaining agreement, any other written agreement under which the employer is contributing to the Fund, or any bankruptcy filing.

4.     The Executive Director or his designee shall forward a letter to the employer advising it of the impending review citing the Trustee's authority to conduct the review.

5.     The auditor shall schedule the payroll review with the employer, who shall make available to the auditor all books and records which the auditor determines are required. Upon a request from the auditor, the employer shall forward the pertinent records to the auditor or make the records available to the auditor for inspection at a location in the Washington, D.C. metropolitan area. Upon approval of the Trustees, Executive Director, or the committee appointed under Section 3, Paragraph 9, the auditor may expand the scope of the payroll review to cover a longer period of time.

6.    Where a payroll review of an employer is conducted and the payroll review discloses an underpayment, a letter shall be sent to the employer advising of the underpayment and requesting the employer to make payment of the underpayment, liquidated damages, interest, auditor's fees and attorneys' fees within thirty (30) days of the date of its receipt of the letter.

7.    After the expiration of the thirty (30) day period, a second letter shall be sent to the employer demanding that the underpayment be remitted immediately.   If payment is not received within ten (10) days of the date of such letter. Fund office staff will turn the matter over to Fund Counsel who will then send a third letter. If payment is not received following the third request, legal counsel shall file suit against the employer and file a Service Contract Act charge against the employer where appropriate.

8.    In the event an employer refuses to permit a payroll review upon request by the Trustees or if the employer refuses the Fund auditor access to pertinent records, the Fund auditor shall refer the matter to legal counsel. In addition to legal fees and costs associated with compelling compliance, the employer shall be obligated to pay any travel expenses incurred by the auditor.

9.    Legal counsel shall thereafter demand that the employer make available such books and records as are necessary for the Fund auditor to conduct the payroll review. If, within a reasonable period of time not to exceed 60 days, the records are not forwarded to the auditor or made available at a Washington, D.C. Metropolitan area location or at such other location as the Trustees may agree to, the employer shall be liable for any attorneys' fees and costs incurred by the Fund in enforcing the Fund's right to review the employer's records.  If necessary, upon approval of the Trustees or Executive Director, counsel shall institute legal action to enforce the Trustees' right to conduct a payroll review and the employer shall be assessed all costs and attorney's fees incurred as a result of the employer's refusal to permit the payroll review or refusal to make available all pertinent records.

10.    Employers will be billed by site whenever the net principal amounts owed are in excess of $50.00.  Billings will be calculated as follows:

a.    Principal: This will be the total of the amount owed for each month showing a net underpayment during the audit period.

PLUS

b.    Interest: Calculated monthly at 10% per annum of the principal amount.

PLUS

c.    Liquidated Damages: Calculated at 5% of the principal amount, or, if greater, $50.

PLUS, if applicable,

d.    Testing Fee: The testing fee will include the auditor's time and expenses in

7

liquidated damages shall be the greater of:

    a.    The interest on the delinquent contributions determined in accordance with paragraph 1 above;

                    or

    b.    20% of the delinquent contributions.

3.    In the event a lawsuit or other legal action is filed, attorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Fund for such services, for all time spent by legal counsel in collection efforts pursuant to Section 3 hereof or in enforcing the Board of Trustees' rights to payroll reviews pursuant to Section 4 hereof.

4.    All costs actually incurred in court actions for collection of delinquent contributions to enforce the Trustees' right to conduct a payroll review of the employer's records shall be assessed against the delinquent employer, including, but not limited to, filing fees, fees for service of process, copying charges, postage, and such other costs as would otherwise be charged to the Fund.

5.    The obligations to pay interest, liquidated damages and fees chargeable under this policy are contractual in nature and independent of the provisions of ERISA Section 502(g). In consideration for permitting its participation, or continued participation, in the Fund, each contributing employer agrees to be obligated to pay all interest, liquidated damages, fees, and costs chargeable pursuant to this policy.

6.    Liquidated damages are provided herein because actual damages are not susceptible of precise prediction. Liquidated damages are estimated, to the best of the Trustees' ability, to approximate the cost to the Fund of the additional administrative expenses and losses caused by a delinquency. Such costs include, but are not limited to, expenses related to staff employees who must be assigned to collection activities, legal expenses, and expenses for additional accounting and reporting activities.

## SECTION 6
### Reports and Records

1.    Legal counsel and the Executive Director shall each prepare a delinquency report to be presented at each Board of Trustees meeting. The report shall show all employers that are delinquent. The determination of the Board with respect to action on such delinquencies, and the specific bases therefore, shall be recorded in the minutes.

2.    The Executive Director shall maintain a file of currently effective collective bargaining agreements and other agreements detailing the basis upon which employers are obligated to make contributions to the Fund.

## SECTION 7
### Effective Date

The revisions to this Policy shall be effective December 15, 2003.

9

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Service Employees International Union Health and Welfare Fund, et al. | Coalfield Community Action Partnership Inc. d/b/a Mingo Community Action Partnership, Inc. |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**     DC
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**    Mingo
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Richard C. Welch
Mooney, Green, Baker & Saindon, P.C.
1920 L St., NW, Suite 400
Washington, DC 20036

ATTORNEYS (IF KNOWN)

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

● 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. *Antitrust***

☐ 410 Antitrust

○ **B. *Personal Injury/ Malpractice***

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. *Administrative Agency Review***

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. *Temporary Restraini Order/Preliminary Injunction***

Any nature of suit from any category m be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. *General Civil (Other)***     **OR**     ○ **F. *Pro Se General Civil***

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 US 3410
☐ 900 Appeal of fee determinatio under equal access to Justi
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge C...* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act... |

**V. ORIGIN**

⊙ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. J

**VI.  CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
502a3, d1, g2, 515 of ERISA and 301a of LMRA to recover unpaid collectively bargained contributions, interest, and liquidated damages owed.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ $28,632.78 | Check YES only if demanded in c... |
|---|---|---|---|
| | | JURY DEMAND: | YES ☐  NO ☒ |

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  8-12-2008   SIGNATURE OF ATTORNEY OF RECORD   _(signature)_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II

IV.   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.